**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 20, 2015**

# In the Court of Appeals of Georgia

A15A1139. SILVEY v. THE STATE.

MCMILLIAN, Judge.

After a Morgan County jury convicted Christopher Gerald Silvey on two counts of burglary,[1] the trial court denied his motion for new trial. Silvey now appeals the denial of that motion, asserting that the trial court erred in admitting improper evidence of other acts[2] and improper bolstering evidence. He also contends that he received ineffective assistance of counsel both during the plea process and at trial.

---

[1] Each burglary count was charged under a separate indictment, but the two counts were joined for trial.

[2] We use the term "other acts" as defined and adopted by the Supreme Court to refer to evidence admitted pursuant to OCGA § 24-4-404 (b). *State v. Jones*, 297 Ga. 156, 158 (1), n.1 (773 SE2d 170) (2015).

Viewed in the light most favorable to support the verdict,[3] the evidence at trial showed that Silvey participated in two burglaries in Morgan County in October 2011. On October 11, 2011, when Kevin Meeler went to the Morgan County home of his friend, Holly Shaifer, he noticed an unfamiliar car in the driveway, a maroon Toyota Camry, with a man sitting in the passenger seat. Meeler knocked on the door of the house and rang the doorbell, but no one answered. Then as he began to back his car out of the driveway, he saw a man with "blondish colored hair" he did not recognize walking from behind the Shaifers' garage. Meeler pulled back into the driveway and asked the man what he was doing. The man first told him that his car was running hot and that he and the other man were looking for water. He then told Meeler that when they stopped the car, their dog, a black and white terrier, jumped out of the car window, and they were looking for it. Meeler wrote down the car's license tag number, told the men to leave, and then notified the police and the Shaifers.

An officer from the Madison Police Department responded to the call after the maroon car had already left. He checked the exterior of the house for signs of a break-in but found nothing out of place. Holly Shaifer arrived home later, but she did not notice anything missing inside her house. However, she did not check a jewelry box

---

[3] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

that she kept in the bathroom, which held her "nice . . . more sentimental" jewelry. Approximately one month later, at the request of police, Shaifer did a more thorough check and noticed that jewelry she kept in that box was missing.

The license plate number that Meeler wrote down was later traced back to Silvey's mother. At trial, Silvey's co-defendant Jamie Lyn Webb testified that he was the man sitting in the passenger seat of that car when Meeler arrived, and Silvey was the man who emerged from behind the garage to speak with Meeler. Webb said that Silvey had entered the Shaifers' house while he sat outside, and when Silvey got back in the car, he pulled a bundle of gold jewelry out of his pocket. The men sold some of the jewelry for cash the same day.

Nine days after the incident at the Schaifers' house, Lori Ghann went home during her lunch break. When she arrived, she saw a "reddish burgundy" car, with the hood up, parked in her carport next to her water spigot. A dark-haired man of average height was looking under the hood, and as she pulled in the driveway, he approached the car to tell her that he had stopped to get some water because his car had been running hot. Ghann then noticed a man inside her house through the kitchen window. As she began backing out of her driveway, the first man said their dog had jumped out of the car window and the other man was looking for it. As Ghann called 911, she

3

saw the other man come around the front of her house; Ghann described him as blonde and a little older and taller than the first man. As she was talking on the phone, the men pulled up beside her. The blonde man told her that they did not mean to scare her, but Ghann told him that she had seen him inside her house. The man denied it and then drove off.[4]

Webb testified at trial that Silvey and he were the men at Ghann's home that day, and Silvey was driving the same Toyota Camry he drove to the Shaifers' house. Webb was the man outside under the hood of the car of the car when Ghann drove up, and Silvey was inside the house. He said that Silvey had only been in the house a couple of minutes when Ghann arrived.

Webb further testified that Silvey and he committed burglaries to get money to buy drugs. These burglaries began after he asked Silvey where he got his money, and Silvey replied that he had been committing burglaries to raise cash. Webb joined him for the first time on the Shaifer burglary. He said that Silvey usually drove the maroon Toyota Camry, picked out the locations for the burglaries, and broke into the

---

[4] The Shaifer and Ghann burglaries will be referred to collectively herein as the "Morgan County burglaries."

houses using a plastic grocery store card to manipulate the locks, while Webb waited outside. After the burglaries, they sold the valuables they stole for cash.

When questioned by police near the time of the Shaifer burglary, Meeler was unable to pick Silvey from a photographic lineup, and neither Ghann nor Meeler could identify him at trial. To establish identity, the State presented photographs and testimony reflecting that near the time of the Morgan County burglaries, Silvey had longer, lighter hair than he did at trial. Webb testified, for example, that Silvey was eight or nine years older than him and, at the time of the trial, was heavier, more clean shaven, and had shorter hair than at the time of the Morgan County burglaries. Another witness testified that at the time of their arrests, Silvey had "dirty blonde" hair and was two inches taller than Webb.

Additionally, the State presented evidence of Silvey's arrest in connection with a third burglary, which took place in Greene County. Webb was arrested first in connection with two unrelated Greene County burglaries. Afterwards, he cooperated with the Greene County Sheriff's Office by showing investigators the residences he had burglarized alone, residences he had burglarized with Silvey, and residences he said Silvey had identified as places he had burglarized alone in Morgan, Greene, and Putnam Counties. During the investigation into these burglaries, an investigator

5

discovered that Silvey had pawned a Greene County High School class ring belonging to Tyrone Janes (the "Class Ring"),[5] who lived at one of the Greene County burglary sites that Webb claimed Silvey had admitted burglarizing alone (the "Janes burglary"). The State further introduced a copy of the pawn ticket for the ring, which contained Silvey's name and identifying information (the "Pawn Ticket").

The State also played a video of Silvey's interview with police. During that interview, Silvey denied any involvement in the Morgan County burglaries but admitted that he had been in Morgan County on two occasions looking for his dog, a black and white terrier. He said it was possible, therefore, that someone might be able to pick his picture out of a lineup in connection with that circumstance. After Silvey was convicted of the two Morgan County burglaries and his motion for new trial was denied, this appeal followed.

1. Silvey asserts that the trial court erred in allowing evidence of the Janes burglary under OCGA § 24-4-404 (b) of Georgia's new Evidence Code.[6] Under the

---

[5] Janes was unaware that his ring was missing until he was contacted by police. He subsequently discovered that not only was his class ring gone, but a gold nugget ring and a silver necklace were also missing.

[6] Because Silvey was tried in April 2013, Georgia's new Evidence Code applies in this case. See Ga. L. 2011, p. 99, § 101 (new Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013).

6

new Code, "[a] trial court's decision to admit other acts evidence will be overturned only where there is a clear abuse of discretion." *State v. Jones*, 297 Ga. 156, 159 (1) (773 SE2d 170) (2015).

In determining the admissibility of other acts evidence, our Supreme Court has adopted the test set out by the Eleventh Circuit Court of Appeals.[7]

> Under this test, in order to be admissible, the State must make a showing that: (1) evidence of extrinsic, or other, acts is relevant to an issue other than a defendant's character, see Rule 404 (b); (2) the probative value of the other acts evidence is not substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of Rule 403; and (3) there is sufficient proof so that the jury could find that the defendant committed the act in question. In no case may evidence of other acts be admitted for the sole purpose of proving the character of the accused to show that he acted in conformity therewith. See OCGA § 24-4-404 (b).

(Citations omitted.) *Jones*, 297 Ga. at 158-59 (1). See also *Bradshaw v. State*, 296 Ga. 650, 656 (3) (769 SE2d 892) (2015).

---

[7] When Georgia courts consider the meaning of the new Code provisions closely modeled after the federal rules, such as OCGA § 24-4-404 (b), they look to decisions of the federal appeals courts construing and applying the applicable Federal Rules, especially the decisions of the Eleventh Circuit. See *Parker v. State*, 296 Ga. 586, 592 (3) (a) (769 SE2d 329) (2015).

(a) Applying the test in this case, we note that the trial court admitted the evidence of the Janes burglary to show intent and identity. Under the first prong of the test, our Supreme Court has adopted the following federal analysis for the issue of intent:

> [A] defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404 (b) evidence absent affirmative steps by the defendant to remove intent as an issue. Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses. Thus, where the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404 (b) test is satisfied.

(Citation and punctuation omitted.) *Bradshaw*, 296 Ga. at 656-57 (3).

Silvey pled not guilty to the charges in this case, thus making intent a material issue, and he failed to take affirmative steps to remove it from the case. See *United States v. Williford*, 764 F2d 1493, 1498 (11th Cir. 1985) (discussing the use of a stipulation to remove issue of intent from case). Although Silvey argues that his defense denying that he was involved in the burglaries removed the element of intent from the case, the Eleventh Circuit has consistently rejected such an argument. See,

8

e.g., *United States v. Cardenas*, 895 F2d 1338, 1342 (II) (A) (11th Cir. 1990) (where "there is no indication in the record that defendant would have conceded his intent to participate in the [crime] if the government proved that he was involved," issue of intent remains in case); *United States v. Nahoom*, 791 F2d 841, 845 (II) (11th Cir. 1986) (rejecting argument that denial of involvement in crime removes issue of intent from the case); *United States v. Russo*, 717 F2d 545, 552 (C) (11th Cir. 1983) (per curiam) ("mere denial of participation in [an offense] is insufficient to remove the issue of intent from the case"); *United States v. Holman*, 680 F2d 1340, 1349 (II) (B) (11th Cir. 1982) (unequivocal denials of participation in the crime along with representations that defendant would not actively dispute the existence of intent were insufficient to remove the issue of intent from the case). Thus, intent remained a material issue at trial.

Because Silvey's actions in committing the Janes burglary and pawning the Class Ring involved the same mental state as burglarizing a house to obtain gold jewelry to sell for cash, the evidence from the Janes burglary was relevant to establish intent.[8] See *Bradshaw*, 296 Ga. at 657 (3).

---

[8] As we have found that the evidence was relevant to establish intent, we need not analyze whether the evidence was also admissible on the issue of identity. See *Bradshaw*, 296 Ga. at 656-57 (3) (analyzing only issues of intent and motive where

(b) In addressing the second prong of the test, we apply the balancing test under OCGA § 24-4-403, which provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The Eleventh Circuit previously has determined that "Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence." (Citation and punctuation omitted.) *United States v. Merrill*, 513 F3d 1293, 1301 (II) (11th Cir. 2008). See also Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence 120-21 (3d ed. 2015) ("Rule 404 (b) is one of inclusion which allows extrinsic evidence unless it tends to prove only criminal propensity."). Here, we find no clear abuse of the trial court's discretion in determining that the evidence was more probative as to Silvey's intent than prejudicial.

(c) Under the third prong of the test, "there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the [other] act(s) in question." *United States v. Edouard*, 485 F3d 1324, 1344 (II) (C)

---

Rule 404 (b) evidence admitted to show intent, motive, *and* identity); *Logan-Goodlaw v. State*, 331 Ga. App. 671, 675 (2), n.2 (770 SE2d 899) (2015) (physical precedent only).

(11th Cir. 2007). See also *Bradshaw*, 296 Ga. at 258 (3). Here, the Greene County investigator testified that Webb told him that Silvey had admitted burglarizing a home on the street where Janes lived. Moreover, the Pawn Ticket containing Silvey's information and the owner's testimony that he checked the state-issued ID of the individual who pawned the Class Ring provided sufficient proof for the jury to find by a preponderance of the evidence that Silvey was the individual involved.

Accordingly, we find no clear abuse of discretion in the trial court's admission of the evidence from the Janes burglary.

2. Silvey also contends that the trial court erred in allowing the Greene County investigator to testify to prior statements made by Webb and Ghann, which Silvey argues improperly bolstered the credibility of those witnesses.

Under OCGA § 24-8-801 (d) (1) (A), a prior out-of-court statement by a witness "shall not be hearsay if the declarant testifies at the trial or hearing, is subject to cross-examination concerning the statement, and the statement is admissible as a prior inconsistent statement or a prior consistent statement under [OCGA §] 24-6-613 or is otherwise admissible under this chapter." And under OCGA § 24-6-613 (c),

> [a] prior consistent statement shall be admissible to rehabilitate a
> witness if the prior consistent statement logically rebuts an attack made

11

on the witness's credibility. A general attack on a witness's credibility with evidence offered under [OCGA §] 24-6-608 or 24-6-609 shall not permit rehabilitation under this subsection. If a prior consistent statement is offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive, the prior consistent statement shall have been made before the alleged recent fabrication or improper influence or motive arose.

Although OCGA § 24-6-613 (a) and (b) generally follow the comparable federal rule,[9] subsection (c) represents a codification of existing Georgia law on prior consistent statements, as set out in cases such as *Woodard v. State*, 269 Ga. 317, 320 (496 SE2d 896) (1998), overruled on other grounds by *Bunn v. State*, 291 Ga. 183 (728 SE2d 569) (2012). See also *Cowart v. State*, 294 Ga. 333, 339-40 (4) (a), n.10 (751 SE2d 399) (2013); Carlson, *supra* at 333.

Our Supreme Court has explained that "[a] witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement only if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination." (Citation omitted.) *Cowart*, 294 Ga. at 339-40 (4) (a). Where such an attack occurs, "evidence is admissible that [the witness] told the same

---

[9] See Fed. R. Evid. 613 (a) and (b).

story *before* the motive or influence came into existence or *before* the time of the alleged recent fabrication. In those circumstances, the prior consistent statement is defined as not hearsay and thus is admitted into evidence." (Citation and punctuation omitted; emphasis in original.) Id. In the absence of such an affirmative attack, any prior statement by that witness "is pure hearsay evidence, which cannot be admitted merely to corroborate the witness, or to bolster the witness's credibility in the eyes of the jury." (Citation omitted.) Id. at 340 (4) (a). Moreover, if the prior statement is made after the motive or influence came into existence, "proof of the statement does not assist the jury to evaluate the witness's testimony because the reliability of the statement is subject to the same doubt as the trial testimony." (Citation and punctuation omitted.) Id.

(a) *Webb's prior statement* – Silvey asserts that the trial court erred in admitting the following testimony by the investigator:

> When we were doing the ride-along, [Webb] had pointed out . . . there [were] burglaries that [Webb] did on his own that he admitted to and then there were burglaries that he stated that he and Mr. Silvey did together and then he stated that Mr. Silvey had done some burglaries on his own and had told him about them.

Silvey's counsel objected on the ground that this testimony was hearsay, bolstering, and character evidence, which the trial court overruled. We review that ruling for an abuse of discretion. *Kidd v. State*, 292 Ga. 259, 261 (2) (736 SE2d 377) (2013).

On appeal, Silvey does not dispute that his attorney questioned Webb's credibility and raised issues of improper motive during its cross-examination of Webb, and the record demonstrates that Silvey's attorney, in fact, led off his cross-examination of Webb by questioning his motives for testifying and attacked his credibility throughout. Specifically, Silvey's attorney elicited testimony that Webb had rejected a plea deal with the hope that the State would offer a better one if he cooperated and testified at Silvey's trial.

However, Silvey argues that Webb's statement did not predate his improper motive of wanting to lessen his own culpability, which Silvey asserts arose when Webb's house was searched and he was arrested for burglary. In support of this argument, Silvey points to Webb's testimony on cross-examination during which he admitted initially lying to police at the time they searched the house to avoid getting into trouble, as well as Webb's testimony admitting that he lied to his probation officers about improper activities he engaged in to avoid going to jail.

14

Pretermitting whether the trial court erred in overruling Silvey's objection, we find no basis for reversal on this ground. To obtain a reversal based on an improperly admitted prior consistent statement requires harmful error. See OCGA §24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."). "The improper admission of bolstering evidence is a non-constitutional, evidentiary error, so we must determine whether it is 'highly probable' that the error did not contribute to the jury's guilty verdict." *Cowart*, 294 Ga. at 341 (4) (b). And in analyzing the issue, "we may not rely on the fact that [Webb] gave testimony at trial that was consistent with the prior statement that should not have been introduced, as the very nature of the error in admitting the prior consistent statement is that it is repetitive of that to which the witness has already testified." (Citation and punctuation omitted.) *Character v. State*, 285 Ga. 112, 120 (6) (674 SE2d 280) (2009). "In other words, we cannot look to [the witness's] improperly bolstered testimony to show that the bolstering error was harmless." (Citation and punctuation omitted.) *Cowart*, 294 Ga. at 341-42 (4) (b). "Instead, in determining the harmfulness of the statements' admission . . . , we must consider factors such as whether the state's case was based primarily on the bolstered testimony, and whether the improper bolstering added critical weight to that

15

testimony." (Citations omitted.) *Williams v. State*, 327 Ga. App. 283, 287 (3) (b) (758 SE2d 620) (2014).

It is undisputed that the State's case was based primarily on Webb's testimony and the investigator's disputed testimony does repeat some of the statements made by Webb in his testimony. However, the disputed testimony is only general in nature, noting only that Webb admitted committing some burglaries alone and stated that Silvey and he committed burglaries together and that Silvey had admitted committing some burglaries alone. In contrast, over and above the testimony that was consistent with these generalized statements, Webb provided testimony regarding the events of the Shaifer and Ghann burglaries that was consistent with the testimony of Meeler and Ghann in describing those events. Webb also gave additional detailed testimony regarding the crimes in this case, explaining how Silvey chose the burglary locations; how they concocted the story about the overheated car and the dog if they had to explain their presence at a burglary scene; how Silvey used a credit card to break into the houses; how they used a magnet to separate the gold jewelry from the costume jewelry; and how they sold the gold and other items stolen in the burglaries. Accordingly, even though the State relied heavily on Webb's testimony, we find that the investigator's testimony did not give critical weight to that testimony.

16

Moreover, putting Webb's testimony aside, other evidence linked Silvey to the two Morgan County burglaries. Although Webb provided the only direct evidence linking Silvey to the crimes, the State presented other substantial circumstantial evidence of Silvey's participation in the crimes. The car at the Shaifer burglary was traced back to Silvey's mother and a similar car was used in the Ghann burglary; Silvey admitted to police that he had been to Morgan County twice to look for his black and white terrier and thus someone there might be able to pick him out of a photo lineup; and Silvey pawned stolen jewelry from one of the Greene County burglaries. Under these circumstances, we find it highly probable that the investigator's generalized testimony regarding the ride-alongs, even if improperly admitted, did not contribute to the jury's verdict.

(b) *Ghann's prior statement* – Silvey also asserts that the trial court erred in allowing the investigator to testify regarding Ghann's statement about finding two men at her house during her lunch break. Silvey's counsel objected to such testimony as bolstering, and the trial court overruled the objection.

Even if the trial court erred in admitting this testimony, we find that any such error was harmless. The investigator's testimony recounted Ghann's statement that she had come home and found two young men in a maroon car in her driveway. She

17

saw someone in the house and a young man outside, who told Ghann that their car had overheated and when the other man came out and what happened thereafter. Ghann never identified Silvey as one of the two men, either to the investigator before trial or at trial, and the investigator did not recount any description that Ghann gave of the men involved.

During the cross-examination of Ghann, Silvey's counsel confirmed that Ghann could not identify the men she saw at her house that day, nor could she positively identify Silvey's car as the car she saw in her driveway. Otherwise, his counsel repeatedly questioned Ghann about whether she had ever told police about the hair color of the men involved prior to the eve of trial. During closing argument, Silvey's counsel asserted that Silvey did not fit the description of the taller, blonde man Ghann described and suggested that her testimony regarding the men's hair color had been recently orchestrated by the prosecution.

But at no time did Silvey dispute Ghann's description of the events as recounted by the investigator at trial. Silvey's defense was not based on a claim that the incident did not happen in the manner Ghann described but rather on a claim that he was not the man described by Ghann. Thus, because the facts set out in Ghann's statement as recited by the investigator were not in dispute, we find that it is highly

18

probable that the admission of Ghann's prior consistent statement, even if erroneous, did not contribute to the jury's guilty verdict.

3. Silvey also contends that he received ineffective assistance of counsel during the plea process and at trial.

(a) *Plea Process* – Silvey asserts that his trial counsel ("Trial Counsel") was ineffective for failing to adequately advise him about whether to accept the State's plea offer or to go to trial. To establish his claim of ineffective assistance of counsel in the context of a plea bargain, Silvey must establish "that his counsel's representation fell below an objective standard of reasonableness and that the outcome of the plea process would have been different with competent advice. *Lafler v. Cooper*, __ U.S. __ (II) (A), (B) (132 SCt 1376, 182 LE2d 398) (2012)." (Punctuation omitted.) *Cruz v. State*, 315 Ga. App. 843, 845 (1) (729 SE2d 9) (2012). "In regard to the offer of a plea bargain, objective professional standards require that a defendant be told that such an offer has been made and to be advised of the consequences of the choices confronting the defendant." (Citation omitted.) *Dulcio v. State*, 292 Ga. 645, 652 (3) (f) (740 SE2d 574) (2013). Therefore, "[t]rial counsel can be found to have rendered less than reasonably professional assistance if counsel has not informed his client of a plea offer and advised him of the relative

19

consequences of accepting the offer versus going to trial." *State v. Lexie*, 331 Ga. App. 400, 402 (771 SE2d 97) (2015).

"In determining whether a defendant has been prejudiced by counsel's failure to communicate those choices accurately, we must examine the facts of each case to determine whether there is at least an inference from the evidence that defendant would have accepted the offer as made or something similar." (Citation and punctuation omitted.) *Biggins v. State*, 322 Ga. App. 286, 290 (3) (a) (744 SE2d 811) (2013). Georgia courts "also have recognized the 'self-serving nature of a defendant's post-conviction testimony regarding his intent with respect to a plea offer, and have required some further 'objective evidence' that defendant would have accepted a plea offer.'" (Citation and punctuation omitted.) Id. Moreover, we note that "[a] defendant is entitled not to perfect representation but to reasonably effective assistance." *Turner v. State*, 246 Ga. App. 49, 57 (6) (539 SE2d 553) (2000).

Here, Silvey asserts that Trial Counsel never gave him enough information to knowingly and voluntarily consider the State's plea offer. The record demonstrates that at the 404 (b) hearing, the trial court put on the record the State's global offer to settle all the charges in Morgan, Greene, and Putnam Counties for a sentence of twenty years to serve, with the first ten in confinement and the remainder of

20

probation, along with fines and restitution. The trial court informed Silvey that his exposure was 40 years on the burglary charges and then gave him the opportunity to speak with his counsel about the offer. At the two hearings held on the motion for new trial (the "Motion hearing"), Trial Counsel estimated that Silvey and he discussed the plea offer for 30 minutes during the recess in the 404 (b) hearing.

Trial Counsel further testified that he had a number of discussions with Silvey about the State's offer, although he could not remember if the conversations were in person or over the phone. Trial Counsel said he told Silvey about the terms of the State's offer, that he faced a potential sentence of 40 years on the Morgan County burglaries, and that the witnesses against him were going to be "upstanding citizens . . . probably known by some people on the jury." Trial Counsel also recalled going over the discovery with Silvey, and the State introduced a composition notebook filled with Silvey's notes on the cases, which Trial Counsel stated he reviewed and discussed with Silvey.

Silvey testified at the Motion hearing that the first time he met Trial Counsel was the day of the 404 (b) hearing, which was held the day before trial, and they did not discuss his case until after he had already turned down the plea offer. Silvey said he was unaware that his license tag had been identified at one of the burglaries, and

21

he did not know the State would play the video of his interrogation although he was aware the video existed. However, Silvey conceded that Trial Counsel told him that the State's offer was for all 12 pending burglary counts in Morgan, Greene, and Putnam Counties. Silvey also acknowledged that he had heard the testimony of Shaifer, Ghann, Meeler, and the Madison police before trial at a probation revocation hearing where his probation was revoked for committing the Morgan County burglaries, and thus, he "had a good idea" of how the evidence was going to come out. But he asserted that Trial Counsel never discussed the significance of that evidence with him.

We find that the evidence from the Motion hearing supports a finding that Trial Counsel adequately discussed and explained the State's plea offer and the consequences of rejecting it. Although Silvey contradicted his attorney's testimony regarding their discussions, "[w]hen considering claims of ineffectiveness of counsel, the trial judge determines witness credibility and is not required to accept the defendant's version of events." (Citation and punctuation omitted.) *Ansley v. State*, 325 Ga. App. 226, 235 (4) (a) (750 SE2d 484) (2013). Moreover, the trial court put the State's offer on the record and Silvey was informed that he could receive 40 years on the Morgan County burglaries, yet he chose to proceed to trial.

22

Under these circumstances, we find that Silvey has failed to establish that he received ineffective assistance of counsel in connection with the State's plea offer.

(b) *Trial* – Silvey also asserts that Trial Counsel's performance was deficient during trial because he failed to object during the State's closing argument and to Webb's testimony about other burglaries that Webb had committed.

> In order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct. If a defendant fails to meet his burden on one prong of the two-prong test, then the other prong need not be reviewed by the Court.

(Citation omitted.) *Barge v. State*, 294 Ga. 567, 569 (2) (755 SE2d 166) (2014).

(i) Silvey asserts that his attorney was ineffective in failing to raise a contemporaneous objection when the State referenced facts not in evidence during closing argument. During the State's closing, the prosecutor stated that neither her co-counsel nor she had promised anything to Webb in exchange for his testimony,

> and even more importantly, he's been promised nothing by the . . . jurisdiction outside this circuit who he also has cases that he acknowledged. We don't have any control over what, you know,

23

Taliaferro County does or whatever the other counties are, Walton, whatever he said. We don't have any control over them.

The record demonstrates that Trial Counsel, in fact, objected to this argument on the ground that Webb had not testified about being in other jurisdictions.[10] After argument from counsel, the trial court denied the objection. Silvey argues that his attorney waited approximately one minute before raising this objection, and if he had raised it in a timely fashion, "the lower court should have sustained [it]." However, the record demonstrates that the trial court denied the objection on its merits, not on its timing. Therefore, Silvey cannot establish that Trial Counsel's performance was deficient in this regard.

(ii) Silvey also contends that his trial court was deficient in failing to contemporaneously object to the portion of the State's closing argument suggesting that Silvey intentionally changed his appearance for trial by cutting his hair and shaving his facial hair, noting, "If identity is the issue you plan to argue at trial, isn't it in your best interest to look as different as you possibly can at trial? I submit to you that's really the question you should be asking here."

---

[10] We note, however, that Webb testified that he had been charged with burglaries that did not occur in the same circuit as the Morgan County burglaries.

Once again, Trial Counsel objected to this argument and even requested a mistrial, asserting that his client was in prison and thus had no choice as to his hair style. Although Silvey contends that the objection was untimely, the trial court considered the objection on its merits and overruled it, finding that Silvey's attorney had opened the door to this argument when he attacked the prosecution by suggesting that they had orchestrated Ghann's description of the men at her house. Accordingly, Silvey has failed to show that he received ineffective assistance of counsel on this ground.

Alternatively, Silvey asserts that the trial court erred in denying his counsel's objection. However,

> [t]he permissible range of closing argument . . . is very wide. A prosecutor is granted wide latitude in the conduct of closing argument, the bounds of which are in the trial court's discretion; within the scope of such latitude is the prosecutor's ability to argue reasonable inferences from the evidence, including any that address the credibility of witnesses.

(Citation and punctuation omitted.) *Lamar v. State*, 297 Ga. 89, 93 (3) (772 SE2d 636) (2015). See also *Varner v. State*, 285 Ga. 300, 301 (2) (c) (676 SE2d 189) (2009) (counsel have "'wide leeway . . . to argue all reasonable inferences that may

be drawn from the evidence during closing argument'") (citations omitted). "Requests to limit the scope of closing argument are addressed to the sound discretion of the trial court, and the trial court's resolution of such matters will not be reversed on appeal absent an abuse of that discretion." *Smith v. State*, 284 Ga. 599, 602 (2) (a) (669 SE2d 98) (2008).

Here, the record indicates that Silvey's appearance had changed between the time of the Morgan County burglaries and trial; he had trimmed his hair very short, and it appeared darker than at the time of the burglaries. His face was devoid of facial hair, although he previously had worn a goatee. Although Silvey argues that he had no control over his appearance because he was in prison, the prison regulations he introduced at the Motion hearing indicate that he was allowed to wear his hair up to three inches long on top. And even though the regulations prevented him from wearing a goatee, they allowed mustaches of a prescribed length. The State's argument that Silvey had intentionally changed his appearance to make identification more difficult was a reasonable inference from the evidence, and we find no abuse of discretion by the trial court in overruling Silvey's objection and denying his request for a mistrial. See *Lamar*, 297 Ga. at 93 (3); *Varner v. State*, 285 Ga. at 301 (2) (c).

26

(iii) Silvey further argues that Trial Counsel was ineffective when he failed to object when the State elicited testimony that Silvey contends raised an inference he was involved in 12 other burglaries. In the cited testimony, Webb admitted that he committed the fourteen burglaries with which he was charged, and only committed two of them alone, but he never testified that Silvey was involved in the other twelve burglaries. Silvey asserts that this evidence nevertheless violated the trial court's ruling at the Rule 404 (b) hearing excluding evidence of the two Putnam County burglaries, because the jury could only conclude from the testimony, and the fact that Webb never testified that he committed burglaries with anyone else, that Silvey was involved in all the burglaries that Webb did not commit alone.

At the Motion hearing, Trial Counsel testified that he did not object because the inference he drew from this evidence was that Webb had been committing burglaries all over the State. He did not think that the testimony hurt Silvey, noting that Webb never testified that Silvey was the only person with whom he ever committed burglaries and that he believed no such inference arose at trial.

"Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citation

27

and punctuation omitted.) *Brown v. State*, 321 Ga. App. 765, 767 (1) (743 SE2d 452) (2013). "[T]he making of objections falls within the realm of trial tactics and strategy and thus usually provides no basis for reversal of a conviction." (Citations and punctuation omitted.) *Moon v. State*, 288 Ga. 508, 516 (9) (705 SE2d 649) (2011). Here, Trial Counsel's strategic decision not to object to this testimony was not so patently unreasonable that it amounted to deficient performance, and thus Silvey failed to prove ineffective assistance of counsel on this ground.

*Judgment affirmed. Barnes, P. J., concurs. Ray, J., concurs fully in Divisions 1, 2 (b), 3 (a) and 3 (b)(i) and (iii) and concurs in judgment only as to Divisions 2 (a) and 3 (b)(ii).*