**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 3, 2021**

# In the Court of Appeals of Georgia

A20A1954. KENDRICKS v. THE STATE.

MILLER, Presiding Judge.

Jonathan Kendricks seeks review of his convictions and sentence after a jury found him guilty of rape and aggravated sexual battery. On appeal, he argues that (1) the trial court erred in allowing into evidence a statement from the victim in a journal that was typed by an anonymous therapist; (2) the State's closing argument was improper; (3) the trial court erroneously excluded a forensic interview with the victim's sister; and (4) the cumulative effect of these errors was prejudicial. After a close review of the record, we reject all of Kendricks' claims of error and affirm his convictions and sentence.

Viewed in the light most favorable to the verdicts,[1] the evidence adduced at trial showed that Kendricks was the maternal uncle of J. C. J. C. lived part of the time at her grandparents' house and part of the time at her parents' house. At all relevant times, Kendricks lived at J. C.'s parents' house. Following a juvenile court case, Kenna Reed, J. C.'s father's cousin, eventually obtained sole custody over J. C. J. C.'s two sisters were separately placed in the custody of a maternal aunt.

While J. C. was in Reed's care, she complained about pain and itchiness whenever she used the restroom. Reed examined J. C. and saw redness and blistering around her private parts. A doctor diagnosed J. C. with a urinary tract infection that had lasted for at least six months. Reed asked J. C. if anything had ever happened to her, and J. C. responded that, one day, Kendricks had taken her upstairs to the attic, removed her pull-up, and had sex with her. Reed took J. C. to the police station, and J. C. repeated the story to a police officer.

Elizabeth Mallory, a forensic interviewer with the Edmonson-Telford Child Advocacy Center, conducted an interview with J. C.[2] J. C. told Mallory that, one day, she saw Kendricks with a "box of big, long rubber thingies. Later, while she was

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[2] Video footage of the interview was admitted and played for the jury.

2

asleep, Kendricks came into her room with "the thingy on" and then "ripped the covers off and he did it." During the interview, J. C. drew a picture on an anatomical drawing of a penis, vagina, and condom, and she indicated to Mallory on the drawing that she felt pain afterwards in her stomach area. A gynecologist examined J. C. and saw redness and a little notch on her hymen.

A grand jury indicted Kendricks on one count of rape (OCGA § 16-6-1) and one count of aggravated sexual battery (OCGA § 16-6-22.2). At trial, the jury found Kendricks guilty of both counts, and the trial court sentenced Kendricks to 25 years' imprisonment, followed by probation for life. Kendricks filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

1. Kendricks first argues that the trial court erred by allowing a journal entry from J. C. into evidence. Kendricks argues that the journal entry was inadmissible hearsay and violated his rights under the Confrontation Clause because it was transcribed by an anonymous therapist who did not testify at trial. We disagree.

"Where a party has objected to a trial court's evidentiary rulings at trial, we review the evidentiary rulings for an abuse of discretion." (Citation omitted.) *State v. Parks*, 350 Ga. App. 799, 807 (830 SE2d 284) (2019).

(a) Hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OCGA § 24-8-801 (c). "An out-of-court statement shall not be hearsay if the declarant testifies at the trial or hearing, is subject to cross-examination concerning the statement, and the statement is admissible as a prior inconsistent statement or a prior consistent statement . . . or is otherwise admissible[.]" OCGA § 24-8-801 (d) (1) (A).

The journal in question was a book that J. C. created during therapy sessions. The therapist typed what J. C. said. The State initially introduced the journal during its direct examination of J. C. as a document to refresh J. C.'s memory as to what a condom was and whether Kendricks used a condom. On cross-examination, Kendricks questioned J. C. about the creation of the journal and whether J. C. had told others about the details of what she discussed in therapy and wrote in the journal. On re-direct examination, the State sought to introduce the journal into evidence, which the trial court allowed over Kendricks' objection. The State then used the journal to question J. C. as to whether she was aware of the meaning of the term "cum" and then questioned J. C. as to some of the pictures that she drew in the journal.

4

Under these circumstances, we conclude that the trial court did not abuse its discretion in allowing the journal because it was not hearsay under OCGA § 24-8-801 (d) (1) (A). First, the trial court correctly concluded that J. C. was the declarant of the information of the journal. J. C. testified that, when writing the journal as part of her therapy classes, "I said it and my therapist typed it." J. C. thus had personal knowledge about the creation of the journal, and her testimony alone was competent and sufficient to establish the circumstances of its creation. OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact."). We see no indication from the evidence that the therapist had any role in creating the journal or the content of the journal outside of memorializing J. C.'s statements by typing them. Compare *Hawkins v. State*, 350 Ga. App. 862, 872-873 (7) (830 SE2d 301) (2019) (accountant was an author or declarant of the information in a financial chart depicting the defendant's finances when the accountant "worked together on the content of the chart" with the defendant). Thus, J. C. was the declarant of the information in the journal, she testified at trial, and Kendricks was able to cross-examine her about the statements she made in the journal.

Finally, the journal was admissible as a prior consistent statement. "Generally speaking, unless a witness's veracity has affirmatively been placed in issue, the

5

witness's prior consistent statement is pure hearsay evidence, which cannot be admitted merely to corroborate the witness, or to bolster the witness's credibility in the eyes of the jury." (Citation and punctuation omitted.) *Sullins v. State*, 347 Ga. App. 628, 632 (1) (820 SE2d 468) (2018).

> [A] witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement only if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination. Where such an attack occurs, evidence is admissible that the witness told the same story before the motive or influence came into existence or before the time of the alleged recent fabrication. In those circumstances, the prior consistent statement is defined as not hearsay and thus is admitted into evidence.

(Citation, punctuation, and emphasis omitted.) *Silvey v. State*, 335 Ga. App. 383, 389 (2) (780 SE2d 708) (2015); see OCGA § 24-6-613 (c).

During Kendricks' cross-examination of J. C., he extensively questioned J. C. about whether the details of her story were consistent each time she told someone what happened, and he asked her whether, before trial, she had mentioned certain details that she testified to on direct-examination, such as whether Kendricks had penetrated her with a Coke bottle. Under these circumstances, "we find that defense counsel's questioning placed [J. C.'s] veracity at issue, by implying that she had

6

changed her story for trial." *Nguyen v. State*, 294 Ga. App. 67, 71 (668 SE2d 514) (2008).[3] Thus, the journal entry was admissible to rebut the implication that J. C. had fabricated these details for trial. See id. at 71-72 (videotaped interviews of the victim were admissible as prior consistent statements when defense counsel questioned the victim about a key difference between her testimony at trial and her statements to a doctor, placing her veracity at issue).

(b) Finally, as for Kendricks' Confrontation Clause argument, "[a] Confrontation Clause violation occurs when an out-of-court statement admitted into evidence is testimonial in nature and the declarant is unavailable at trial and was not previously subject to cross-examination." (Citation omitted.) *Varner v. State*, 306 Ga. 726, 730 (2) (b) (i) (832 SE2d 792) (2019). Kendricks' Confrontation Clause argument relies entirely on his conclusion that the therapist was the author of the information, but as noted above, we agree with the trial court that J. C. was the maker of the statements in the journal, not the therapist. Therefore, "the admission of [J.

---

[3] "[OCGA § 24-6-613 (c)] represents a codification of existing Georgia law on prior consistent statements," rather than conforming to the relevant Federal Rule of Evidence, and so our prior law on consistent statements still applies despite the enactment of our current Evidence Code. *Silvey*, supra, 335 Ga. App. at 389 (2).

C.'s] recorded statements did not violate the Confrontation Clause because she testified at trial and was subject to cross-examination." Id.

The journal was therefore properly admissible under OCGA § 24-8-801 (d) (1) (A), and so the trial court did not abuse its discretion or violate the Confrontation Clause by allowing it into evidence.

2. In his second enumeration of error, Kendricks argues that the State made an improper closing argument that injected extrinsic, prejudicial matters that had no basis in the evidence. Kendricks specifically refers to the State's two arguments that the jury would have to explain to the victim why they did not believe her and that, if the jury voted to acquit, they would have to consider "the idea of [J. C.] sitting in the Thanksgiving table with [Kendricks]." Kendricks did not timely object to the first argument, and so he has waived appellate review of that argument. *Gates v. State*, 298 Ga. 324, 328-329 (4) (781 SE2d 772) (2016).[4] As for the "Thanksgiving table"

---

[4] In *Gates*, the Supreme Court of Georgia concluded that plain error review does not apply to challenges to improper closing arguments, and so the lack of a contemporaneous objection waives any appellate review. *Gates*, supra, 298 Ga. at 328-329 (4). Kendricks briefly argues that the Supreme Court's conclusion on this point was wrongly decided, but since *Gates* is direct and binding precedent from the Supreme Court of Georgia, as Kendricks acknowledges, we cannot entertain any argument that it should be overruled. See *Etkind v. Suarez*, 234 Ga. App. 108 (505 SE2d 831) (1998) ("[T]his court has no authority to overrule or modify a decision of the Supreme Court of Georgia as the decisions of the Supreme Court of Georgia shall

argument, Kendricks timely objected to this statement, and the trial court sustained his objection. Kendricks does not argue that the trial court should have done more or that the trial court otherwise erred in sustaining his objection. This enumeration therefore presents nothing for us to review.

3. Kendricks next argues that the trial court erred when it denied his motion in limine to introduce evidence of J. C.'s sister's forensic interview. He argues that the trial court violated his right to present a complete defense when it allowed the evidence of J. C.'s interview (in which J. C. accused Kendricks of molesting both her and her sisters) but not the sister's interview (where the sister denied that she had been molested). We are not persuaded.

> [T]he Due Process Clause in the Fourteenth Amendment [guarantees] criminal defendants a meaningful opportunity to present a complete defense. However, a defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence. . . . [O]nly rarely has [the Supreme Court of the United States] concluded that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence.

bind all other courts as precedents.") (citations and punctuation omitted).

(Citations and punctuation omitted.) *State v. Burns*, 306 Ga. 117, 121-122 (2) (829 SE2d 367) (2019).

Although the trial court denied Kendricks' motion to introduce video footage of the sister's interview, at trial, both the forensic interviewer and J. C.'s sister testified that J. C.'s sister had denied that Kendricks had done anything to her. Kendricks was allowed to extensively question both the sister and the forensic interviewer about the sister's interview and how the sister's statements contradicted J. C.'s statements. Kendricks was thus able to present evidence to the jury to support his defense that J. C. was either not being truthful or had mistaken him for the real perpetrator. Kendricks does not identify any particular statement or fact that was not presented to the jury that was critical to his defense. Under these circumstances, Kendricks has not demonstrated that the trial court abused its discretion by excluding this evidence.

4. Finally, Kendricks argues that the cumulative effect of the trial court's errors warranted a new trial. "Georgia courts considering whether a criminal defendant is entitled to a new trial should consider collectively the prejudicial effect of trial court errors and any deficient performance by counsel—at least where those errors by the court and counsel involve evidentiary issues." *State v. Lane*, 308 Ga. 10, 14 (1) (838

SE2d 808) (2020). As discussed above, the trial court did not abuse its discretion when it allowed into evidence the victim's journal entry nor when it disallowed evidence of the victim's sister's interview. Additionally, Kendricks' claim of error regarding the State's closing arguments does not involve an evidentiary issue or deficient performance by counsel. Moreover, as noted in Division 2, Kendricks waived appellate review of one of the State's allegedly improper arguments, and the trial court sustained his objection on the other argument. Accordingly, Kendricks' claim of cumulative error fails.

For these reasons, we reject Kendricks' enumerations of error and affirm his convictions and sentence.

*Judgment affirmed. Mercier, J., and Senior Appellate Judge Herbert E. Phipps, concur.*