## 28061.   DONLEY *v.* THE STATE.

DECIDED FEBRUARY 10, 1940.

*R. E. Wheeler, J. Bush Mims,* for plaintiff in error.

*B. C. Hayes, solicitor pro tem.,* contra.

MACINTYRE, J. The defendant was convicted of simple larceny. His motion for new trial was overruled, and he excepted.

The prosecutor, Johnnie Freeman, owned a farm in Miller County. Warren Dees, who occupied a house on this farm as a tenant, had two friends, Crystal Donley, the defendant, and Collie Pate, who was charged in a separate indictment with the larceny of the fence wire. Dees testified that the fence wire had been out in front of his house under a tree for some time. The prosecutor testified: "I went over to the place where the wire was located on Thursday afternoon and the wire was there at that time. But the next time I went over there, which was on Saturday morning, the wire was gone. At that time there were some tracks there around the place where the wire had been. There were the tracks of two men and an automobile." He identified the tracks of the automobile as being the tracks of the automobile of his tenant, Warren Dees, because of the peculiar wear of the tread of the tires, and he identified one of the sets of shoe tracks as that of the defendant because, "one of these shoes had a worn place on the bottom of it. I think it was the right shoe, but I won't be positive." He said he knew this track because it corresponded with the shoe track of the defendant, and because he later saw the defendant walking, and he compared the tracks that he made on that occasion with the tracks he saw at the place from which the wire was taken on the Saturday above referred to. He further testified that when he missed the wire he came back to town to report the theft, and there he "saw Crystal Donley [the defendant in this case] and Collie Hays Pate [the defendant in the companion case] standing in front of the beer joint. I reckon they saw me. They walked on off to-

ward the negro cafe. No they didn't run; just went off in a fast walk. Then I sent Mr. Hugh Powell, the chief of police, down there to get these boys and bring them back to where I was. I told them that I had lost some wire and that I did not want to cause anybody any trouble about it, but just wanted my wire back." The policeman testified that he went into a negro restaurant to arrest the defendant and found him behind a door. The prosecutor testified that he made no effort to locate the wire and didn't know what the sheriff did about it; that he didn't think there was any use trying to find it; that on Friday the defendant in this case and the defendant in the companion case came by his house in the car belonging to Warren Dees, and he had a conversation with the defendant at that time, and noticed the worn tread on the tire at that time.

Warren Dees, a witness for the State, testified: "I recall the time when it was said that Mr. Freeman lost some wire. The wire had been out in front of my house under a tree for some time. I loaned my car to Crystal Donley and Collie Hays Pate on Friday night before Mr. Freeman missed his wire on Saturday morning. They kept the car all night. Yes, I lived there at the time that the wire went missing. I had not sold Mr. Freeman my crop in the field but only my fattening crop. That was my home. I had driven my car up in front of the house several times, at least twice, on the Friday before Mr. Freeman missed his wire. On that Friday, Crystal Donley and Collie Pate had come to my house with me to help me catch some chickens. We hunted all over the place for the chickens, all around the yard. Yes, we made tracks all over the place. It was nothing unusual for Collie and Crystal to come to my house, and it was nothing unusual for me to lend Crystal my car. He was like a brother to me and was often at my place. He was there on Friday before the wire went missing, he and Collie both. We went there on my car and left there on my car. The tracks in front of my house were made by my car. I don't know who got the wire."

In his statement the defendant said that he did not steal the wire belonging to Mr. Freeman and did not know anything about what had become of the wire. "As for my tracks, or tracks that look like mine being around Mr. Dees' house, I was at Warren Dees' house with him and Collie Pate on Friday of the week that Mr. Freeman

said that he lost his wire. I went there with Warren Dees to help him catch some chickens, and we were all about the place. I didn't notice any wire there at the time." He further stated that Johnnie Freeman, the prosecutor, was mad with him for some time because he would not work for him for fifty cents per day.

Although the State's evidence very strongly, and we might say conclusively, tended to establish the fact that the tracks, seen near the place from which the wire was stolen, and which must have been made during the interval between Thursday afternoon and Saturday morning, this being the period during which the property was alleged to have been stolen, corresponded in size to the defendant's and showed a worn place on one shoe, and that the tracks of the automobile were identified as those of the automobile belonging to Dees and which the defendant had borrowed and was using on Friday and Friday night, this, without more, would not show to the exclusion of every other reasonable hypothesis that the defendant was guilty of the larceny of the wire. *Cummings* v. *State,* supra; *McDaniel* v. *State,* 53 *Ga.* 253; *Patton* v. *State,* 117 *Ga.* 230, 235 (43 S. E. 533); *Lawson* v. *State,* 21 *Ga. App.* 140 (94 S. E. 52); *Lindsey* v. *State,* 9 *Ga. App.* 299 (3) (70 S. E. 1114).

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*