**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**December 10, 2013**

# In the Court of Appeals of Georgia

A13A2334. WISE v. THE STATE.

BARNES, Presiding Judge.

A jury found Mark Daniel Wise guilty of three counts of burglary, and the trial court denied his motion for new trial.[1] On appeal, Wise contends that the evidence was insufficient to support his convictions. Upon our review, we affirm.

Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to the verdict. *Sidner v. State*, 304 Ga. App. 373, 374 (696 SE2d 398) (2010). "We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation

---

[1] The jury acquitted Wise of four separate counts of burglary.

and punctuation omitted.) Id. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). Guided by these principles, we turn to the record in this case.

This appeal centers on three residential burglaries that occurred in Effingham County over the course of a few days in February 2011. The three residences were a short distance from one another and from Wise's house.

The first residence was broken into on February 8, 2011 while the husband and wife who lived there were at work. The wife returned home in the evening to find that the front door had been pried open. The master bedroom of the residence had been rummaged through and several items of jewelry had been taken. The wife noticed tire tracks in a location outside the residence where neither she nor her husband parked their vehicles. After the wife contacted the police, a crime scene technician arrived and processed the crime scene. The technician photographed the tire tracks identified by the wife. He also located shoe prints outside the residence and photographed them.

The second residence was broken into on February 16, 2011 while the homeowner was at work. When the owner returned home that evening, he noticed that the back door had been pried open. He also found that the safe in his bedroom had been broken open and the contents were strewn over the bed. The police responded

2

to the scene, and while canvassing the area around the second residence, the same crime scene technician who processed the scene of the first burglary discovered and photographed tire tracks and shoe prints.

The third residence was broken into on February 17, 2011. That morning, the police were conducting a "concentrated patrol" in the subdivisions located near the previous burglaries. A patrol officer noticed a white car parked on the shoulder of the road that had not been there approximately ten minutes earlier when he had previously passed through the same neighborhood. The car was parked a short distance from the driveway that led up to the third residence located in the woods. Wise was in the driver's seat and got out of the car when he saw the patrol car pull up behind him. The officer approached Wise, who told the officer that he was in the neighborhood looking for a house to buy but that his transmission had overheated. While Wise was speaking with the officer, Wise's cell phone repeatedly rang with calls from his son. Wise told the officer that his son lived with him in a subdivision located a few miles away and that his son was at home.

The patrol officer observed that the tires on Wise's vehicle appeared to have the same tread patterns as the tire tracks found in the previous burglaries.[2] The officer contacted his superior, and an investigator was dispatched to the scene to speak with Wise. While speaking with the investigator, Wise changed his story, telling the investigator that he had dropped his son off in the neighborhood earlier in the day to look for a friend's house.

As the investigator continued to speak with Wise, he saw someone emerge from the wood line and begin walking in the opposite direction. Another officer approached the man who had come out of the woods and identified him as Wise's son. A police canine unit then was called to the scene and tracked the path that Wise's son had followed through the woods to the back door of the third residence. The door had been pried open. The police contacted the homeowner, who arrived shortly thereafter and discovered that a television and cash had been stolen. The police found the television and cash in the woods behind the residence.

Wise and his son were arrested, after which Wise told the investigator that he had dropped his son off "to look for some stuff." The police impounded the car driven

---

[2] The officer had seen photographs of the tire tracks from the previous burglaries during daily briefings in the squad room.

4

by Wise, which was registered in the name of his daughter who lived with him. The police also seized Wise's shoes. The same crime scene technician involved in the prior investigations matched the tread pattern on the car driven by Wise to the tire tracks found outside the first and second residences that had been burglarized. The technician also determined that the tread pattern on Wise's shoes matched the shoe prints found outside those same two residences.

Wise and his son were jointly indicted for the burglaries of the three residences but were tried separately. At Wise's trial, the owners of the residences, the officers and detectives involved in the investigation and apprehension of Wise, and the crime scene technician who processed the three crime scenes testified to the events as set out above. Wise did not testify or call any witnesses on his behalf. After the close of evidence, the jury found Wise guilty of the three burglaries. Wise filed a motion for new trial, which the trial court denied, resulting in this appeal.

1. Wise argues that the evidence was insufficient to support his conviction for the burglary of the third residence. According to Wise, the evidence presented by the State showed nothing more than his mere spatial proximity to the scene of the burglary. We are unpersuaded because there was sufficient evidence to convict Wise as a party to the crime of burglary.

A person commits burglary by "entering or remaining in a dwelling house of another . . . without authority and with the intent to commit a . . . theft therein." *Hopkins v. State*, 309 Ga. App. 298, 300 (1), n. 5 (709 SE2d 873) (2011). See OCGA § 16-7-1 (b). Any person "concerned in the commission of a crime" is a party to the crime and can be convicted of it. OCGA § 16-2-20 (a). A person is "concerned in the commission of a crime" if, among other things, he "[d]irectly commits the crime" or "[i]ntentionally aids or abets in the commission of the crime." OCGA § 16-2-20 (b) (1), (3). "Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of a crime." (Citation and punctuation omitted.) *Nangreave v. State*, 318 Ga. App. 437, 439 (2) (734 SE2d 203) (2012). Applying these principles, we have held that a getaway driver who waits for his co-defendant to return to the car can be found guilty as a party to the crimes committed by the co-defendant. See id.; *Jackson v. State*, 274 Ga. App. 279, 281 (617 SE2d 249) (2005); *Parnell v. State*, 260 Ga. App. 213, 219-220 (6) (581 SE2d 263) (2003).

Here, as previously noted, the evidence showed that Wise was parked on the shoulder of the road a short distance from the burglarized residence; his son repeatedly tried to call him while the police spoke with him; his son shortly thereafter

6

emerged from the wood line near the third residence; a police canine unit tracked the son's path back to the residence that had just been burglarized; and items taken from the residence were later found in the woods behind the residence. Additionally, Wise gave inconsistent statements to the police regarding his reasons for being parked on the side of the road, ultimately telling the police that he had dropped his son off "to look for some stuff." Based on this combined evidence, it was reasonable for the jury to conclude that Wise drove his son to the third residence so that his son could burglarize it, served as the lookout during the burglary, and intended to act as the getaway driver once his son had completed the burglary. Accordingly, we conclude that a rational jury was authorized to find Wise guilty beyond a reasonable doubt of intentionally aiding and abetting his son in the commission of the burglary of the third residence. *Jackson*, 443 U. S. at 319 (III) (B). See *Nangreave*, 318 Ga. App. at 439-440 (2) (defendant guilty as party to the crime of burglary where she waited for co-defendant in parked car and then acted as getaway driver); *Dixon v. State*, 277 Ga. App. 656, 659 (627 SE2d 406) (2006) ("Acting as a lookout for a person who is committing a crime authorizes a conviction for that crime.").

2. Wise also contends that the evidence was insufficient to support his convictions for the burglaries of the first and second residences. In this regard, he

7

argues that the tire tracks and shoe prints found outside those two burglarized residences were the sole evidence relied upon by the State to establish his guilt. Wise contends that the tire tracks and shoe prints failed to establish that he committed any crime at either residence and did not rule out every other reasonable hypothesis except his guilt. Again, we are unpersuaded.

"To warrant a conviction on circumstantial evidence, the proven facts must exclude every other reasonable hypothesis except the guilt of the accused." *Nangreave*, 318 Ga. App. at 439 (1). See former OCGA § 24-4-6.[3] However, the circumstantial evidence "need not exclude every *conceivable* inference or hypothesis – only those that are reasonable." (Emphasis in original.) *Merritt v. State*, 285 Ga. 778, 779 (683 SE2d 855) (2009). Moreover,

> [w]hether a hypothesis is reasonable and whether every other hypothesis except the guilt of the accused has been excluded are generally questions for the jury to decide. Because jurors are able to hear and observe the witnesses, and thus are better able to judge the reasonableness of a hypothesis raised by the evidence, this Court will not disturb their findings unless it is unsupportable as a matter of law.

---

[3] Because the present case was tried in April 2012, the new Georgia Evidence Code does not apply. See Ga. Laws 2011, Act 52, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date.").

(Citations and punctuation omitted.) *Nangreave*, 318 Ga. App. at 439 (1).

We conclude that the evidence presented at trial, although circumstantial, was sufficient to allow the jury to find that every other hypothesis except the guilt of Wise had been excluded and to find him guilty beyond a reasonable doubt of the burglaries of the first and second residences. It is true, as Wise indicates, that shoe prints alone are generally not sufficient to authorize a conviction. See *Cummings v. State*, 110 Ga. 293 (35 SE2d 117) (1900); *Harper v. State*, 171 Ga. App. 63, 64 (318 SE2d 502) (1984); *Banks v. State*, 7 Ga. App. 812 (68 SE 334) (1910). Likewise, tire tracks alone are generally not sufficient to authorize a conviction. See *Brown v. State*, 287 Ga. App. 115, 118 (2) (650 SE2d 780) (2007). Here, however, *both* tire tracks *and* shoe prints connected Wise to the burglaries of the first and second residences. Furthermore, Wise was caught by the police wearing the same shoes and driving the same car while in the process of participating in the burglary of the third residence, which was close in geographic proximity to the other two residences that were burglarized earlier that same month. Consequently, based on the totality of the circumstances, the evidence was sufficient to support Wise's convictions for the burglaries of the first and second residences. See *Elliott v. State*, 193 Ga. App. 49, 49-50 (387 SE2d 18) (1989) (evidence sufficient where tire tracks and footprints

9

connected defendant to burglary). See also *Shaw v. State*, 211 Ga. App. 647, 648-649 (1) (440 SE2d 245) (1994) (jury could reasonably infer defendant's identity as burglar of third residence based on logical connection between that burglary and the burglaries of two other residences charged in same indictment in which defendant had been "caught red-handed by eyewitnesses").[4]

*Judgment affirmed. Miller and Ray, JJ., concur.*

---

[4] Wise's reliance on *Donley v. State*, 61 Ga. App. 667, 668-670 (7 SE2d 210) (1940) is misplaced. In that case, the only evidence potentially linking the defendant to the theft of fence wire on a farmer's property were tire tracks and shoe prints found on the property. Id. at 670. Significantly, however, there also was evidence that the defendant had been on the farm property to visit a friend who lived there as a tenant and to help him catch some chickens. Id. at 669-670. Under those circumstances, where there was a reasonable alternative hypothesis for why the defendant had been on the farm property, we concluded that the evidence was insufficient to support the defendant's larceny conviction. Id. at 670. No such reasonable alternative hypothesis existed in the present case, where there was no alternative explanation before the jury as to why the shoe prints and tire tracks linked to Wise would have been present at the first and second burglarized residences, and where Wise was caught wearing the same shoes and driving the same car while participating in a third burglary.