**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 27, 2018**

# In the Court of Appeals of Georgia

A17A1789. HARVEY v. THE STATE.

REESE, Judge.

A jury found Reginald Harvey guilty of burglary in the first degree and felony theft by taking.[1] He appeals from the trial court's denial of his motion for new trial, arguing that the evidence was insufficient to support his convictions, the court erred in admitting certain evidence, and the court erred in sentencing him. For the reasons set forth, infra, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the record shows the following facts. On October 15, 2014, Harold Cochran drove to his sister-in-law's home in Whitfield County. As Cochran arrived at about 2:40 p.m., he saw a man he

---

[1] OCGA §§ 16-7-1 (b); 16-8-2; 16-8-12 (a) (1) (B).

[2] See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

did not recognize walking from the garage area of the home. The man was "[v]ery well-dressed," wearing dark pants, a purple dress shirt, and a lanyard. Cochran started to approach the man, but the man avoided eye contact and quickly got into an older model Cadillac that was parked in the house's driveway. The man backed out of the driveway and started driving away at a high rate of speed, so Cochran followed him and called 911. However, Cochran eventually lost sight of the Cadillac.

Cochran returned to his sister-in-law's home and talked to a police officer who had responded to the 911 call. Upon entering the house, the officer observed that there was no sign of forced entry and that all of the doors and windows were shut and locked with the exception of one window, which was open several inches. The homeowner arrived home, and, after walking through the house, she told the officer that the only things that appeared to be missing were her jewelry box and several pieces of jewelry. The homeowner also noticed that the ceiling fan in her bedroom had been turned off, even though she always kept it running, even when she was not at home.

Within a few days, the homeowner gave a police detective a list of the missing jewelry with each piece's approximate value. According to the list, the burglar had stolen, among other things, several diamond rings; a "bridal set" of rings; a pair of

tungsten wedding bands; a gold ring engraved with the initials of the homeowner and her late husband; a "pinky" ring engraved with the initials of the homeowner's maiden name; diamond earrings; several necklaces (some with diamonds and pearls); and several watches. The homeowner testified that the total value of the stolen jewelry was "well over $5,000."

The detective investigating the burglary checked a website, Leadsonline.com, that showed recent pawn shop transactions in the area. According to the website, a man identified as "Reginald Harvey" had sold several pieces of jewelry that appeared to match the homeowner's list to at least two local pawn shops on October 16, 2014, the day after the burglary, as well as on October 17 and 22, 2014. The detective contacted the pawn shops, and the shops e-mailed pictures of the jewelry to the detective. He then forwarded the pictures to the homeowner, who identified the items as some of the pieces that had been stolen from her home. The jewelry also matched the items described on the list that the homeowner had provided. The detective then retrieved the jewelry and returned it to the homeowner, although not all of the jewelry that had been stolen was recovered.

The detective also obtained a search warrant for the Appellant's home. During the search, the detective found a purple dress shirt, a small envelope with "2004

3

Cadillac DeVille" and "Reginald Harvey" written on it, several jewelry boxes of various sizes, and numerous pieces of jewelry. The detective photographed the jewelry boxes and jewelry and sent the pictures to the homeowner, but none of the items belonged to her. The detective testified that he thought it was odd that the Appellant had so many pieces of women's jewelry and several jewelry boxes because he found no other evidence that a woman lived in the Appellant's house.

In addition, the detective obtained surveillance camera video recordings from a convenience store that was less than one quarter mile from the house at issue. The recordings showed that, at 2:26 p.m. on the day of the burglary, a man who was wearing a dark-colored dress shirt, a tie, and a lanyard with an identification badge entered the store. The detective also obtained a video recording from a security camera located at a public park near the house. The recording was from the day of the burglary, October 15, 2014, and showed a person walking around the outside of the house at issue, disappearing briefly, then reappearing, and repeating this pattern a few times between 2:30 and 2:40 p.m.

The Appellant was arrested and charged with burglary in the first degree and felony theft by taking. At trial, in addition to presenting the above evidence, the State showed that the Appellant had entered guilty pleas to multiple counts of residential

4

burglary and theft by receiving jewelry in 1990 and 1996.[3] Ultimately, the jury

convicted him on both counts in this case: burglary in the first degree and felony theft

by taking. The trial court denied his motion for new trial, and this appeal followed.

> On appeal from a criminal conviction, we view the evidence in the
> light most favorable to the verdict and an appellant no longer enjoys the
> presumption of innocence. This Court determines whether the evidence
> is sufficient under the standard of *Jackson v. Virginia*,[4] and does not
> weigh the evidence or determine witness credibility. Any conflicts or
> inconsistencies in the evidence are for the jury to resolve. As long as
> there is some competent evidence, even though contradicted, to support
> each fact necessary to make out the State's case, we must uphold the
> jury's verdict.[5]

The standard of *Jackson v. Virginia*, supra, is met if the evidence is sufficient for any

rational trier of fact to find the defendant guilty beyond a reasonable doubt of the

crime charged.[6] Further, we review the trial court's admission of evidence of other

---

[3] See Division 2, infra.

[4] 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[5] *Walker v. State*, 329 Ga. App. 369, 370 (765 SE2d 599) (2014) (punctuation and footnote omitted).

[6] *Clark v. State*, 275 Ga. 220, 221 (1) (564 SE2d 191) (2002).

5

criminal acts for a clear abuse of discretion.[7] With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

1. The Appellant contends that there was no direct evidence, such as fingerprints inside the victim's home, to prove that the Appellant committed the burglary[8] and that the circumstantial evidence presented by the State was insufficient to support his convictions.

Under OCGA § 24-14-6, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."

> However, the circumstantial evidence need not exclude every *conceivable* inference or hypothesis — only those that are reasonable. Moreover, whether a hypothesis is reasonable and whether every other hypothesis except the guilt of the accused has been excluded are generally questions for the jury to decide. Because jurors are able to hear and observe the witnesses, and thus are better able to judge the

---

[7] See *Silvey v. State*, 335 Ga. App. 383, 386 (1) (780 SE2d 708) (2015).

[8] See OCGA § 16-7-1 (b) (2014) ("A person commits the offense of burglary in the first degree when, without authority and with the intent to commit a felony or theft therein, he or she enters or remains within an occupied, unoccupied, or vacant dwelling house of another[.]").

reasonableness of a hypothesis raised by the evidence, this Court will not disturb their findings unless it is unsupportable as a matter of law.[9]

Here, the circumstantial evidence showed that, on the afternoon of the burglary, a man entered a convenience store near the house that was burglarized. Minutes later, the same man was seen outside the house's garage, and he sped away in a Cadillac when Cochran arrived at the house. Inside the house, a ceiling fan had been turned off, and a jewelry box and jewelry were missing, which indicated that someone had been inside the house after the homeowner had left that day. Over the next few days, the Appellant sold some of the stolen jewelry to at least two local pawn shops. Then, while searching the Appellant's house, police officers found a purple dress shirt similar to the one the man at the house was wearing and an envelope indicating that the Appellant had a 2004 Cadillac DeVille. Officers also found several jewelry boxes and numerous pieces of women's jewelry in the Appellant's home, even though it did not appear that a woman lived there. Finally, the State showed that the Appellant had previously pled guilty to burglarizing several residences.

---

[9] *Wise v. State*, 325 Ga. App. 377, 381 (2) (752 SE2d 628) (2013) (citations and punctuation omitted; emphasis in original).

In addition to this evidence, the State presented the testimony of the managers of two of the pawn shops at issue to prove that the Appellant was, in fact, the man who sold the homeowner's jewelry to the shops within days of the burglary. The store manager from one of the pawn shops, EZPAWN in Chattanooga, Tennessee, testified about her shop's procedures when someone brought in items to sell. She testified that customers wanting to either sell or pawn an item had to present a valid identification card ("I.D."). A shop employee then appraised the item, and the customer signed the purchase or pawn ticket. The manager admitted that the shop did not pay the fair market value for jewelry it purchased from customers. Every night, the shop uploaded information about all of its transactions onto the Leadsonline.com website and also sent it to the police department. The manager identified two purchase tickets for jewelry sold to the shop by a person identified as "Reginald Charles Harvey" on October 16 and 22, 2014. The purchase tickets listed the items "Reginald Charles Harvey" sold to the store as, inter alia, a pair of white gold, double-stud diamond earrings; a man's gold diamond ring; a woman's 14-carat gold cluster diamond ring; and a diamond pendant. The tickets had the Appellant's driver's license information on them, and the manager testified that there was no way someone other than the man pictured on the license could have sold the items to the shop using the Appellant's

driver's license. In fact, the manager testified that she recognized the Appellant because he was a frequent customer of the pawn shop, and she identified him at trial as the customer she knew as "Reginald Harvey."

The manager of the other pawn shop, Cash America Pawn in Chattanooga, testified that, when a customer came to the shop to sell an item, the shop employee first checked the customer's I.D., which had to be a valid, state-issued I.D. card. The employee then appraised the item and told the customer how much the shop was willing to loan or pay for the item. For customers wanting to sell an item, the employee created a merchandise purchase receipt; a copy of the receipt would also be stored online on the Leadsonline.com website. The manager identified a purchase receipt that had the name "Reginald C. Harvey" on it along with information from the customer's driver's license. The receipt showed that the Appellant sold several pieces of jewelry to the shop at 11:20 a.m. on October 16, 2014. According to the shop manager, no one other than the Appellant could have sold the items because "[t]he driver's license picture [had] to match the person in front of us."

Despite this volume of evidence, the Appellant's counsel argued to the jury that the State had failed to prove that *any* burglary had actually occurred. Counsel argued that the State had not presented any evidence of a forced entry into the house,

fingerprints of an alleged burglar,[10] or pictures of the scene. He also pointed out that there were several other items of value in the house that had not been stolen. Counsel attacked the identification evidence showing that the Appellant was the man who had sold the jewelry to the pawn shops. He also argued, however, that, even if the Appellant had sold the jewelry to the pawn shops, the State had failed to disprove the possibility that the Appellant had obtained the jewelry from someone else, i.e., the person who had *actually* committed the burglary.[11] Thus, according to counsel, the State failed to prove the Appellant committed a burglary in this case and, instead, was trying to convince the jury to convict the Appellant solely based upon his prior burglary convictions.

---

[10] The police detective who processed the scene after the burglary was discovered testified that he was unable to lift any fingerprints from the partially-opened window.

[11] Although the Appellant also argues on appeal that the court improperly allowed Cochran, the homeowner's brother-in-law, to identify him at trial as the man he saw outside the house on the day of the burglary, the Appellant failed to object to this evidence at trial, and thus waived any error. See *Williams v. State*, 277 Ga. App. 106, 108 (2) (625 SE2d 509) (2005) ("We are a court for the correction of errors of law committed by the trial court where proper exception is taken, and we will not consider issues and grounds for objection, even of a constitutional magnitude, which were not raised and determined in the trial court.") (footnote omitted). He also waived appellate review by failing to enumerate this allegedly erroneous admission of evidence as error in his appellate brief. See *Cobble v. State*, 268 Ga. App. 792, 794 (2) (603 SE2d 86) (2004).

Ultimately, however, the jury heard the evidence, the arguments of counsel, and the instructions from the trial court, including two separate instructions on the limited consideration of the prior guilty pleas. It was solely up to the jury to decide whether the only reasonable explanation supported by the evidence was the Appellant's guilt.[12] We find that the circumstantial evidence presented in this case was more than sufficient to uphold the jury's conclusion that the Appellant had committed the burglary and theft as charged beyond a reasonable doubt.[13]

2. The Appellant argues that the trial court erred in admitting evidence of other criminal acts he committed several years ago, complaining that the evidence was irrelevant and unduly prejudicial. He contends that the State improperly used the

---

[12] See *Wise*, 325 Ga. App. at 381 (2).

[13] See id.; see also *Ricks v. State*, 327 Ga. App. 291, 294 (2) (758 SE2d 624) (2014); *Chambers v. State*, 288 Ga. App. 550, 550-551 (654 SE2d 451) (2007) ("Evidence of recent, unexplained possession of stolen goods may be sufficient to give rise to an inference that the defendant committed the burglary. [Moreover, in this case,] the strong inference of guilt arising from possession within hours of the theft (the nearer the possession to the time of the theft, the stronger will be the inference of guilt) was compounded by the manner in which [the defendant] disposed of the goods, namely pawning them within hours of the theft.") (citation and punctuation omitted); see generally *Patch v. State*, 337 Ga. App. 233, 237 (1) (786 SE2d 882) (2016) ("[T]o set aside the conviction, it is not sufficient that the circumstantial evidence show that the act might by bare possibility have been done by somebody else.") (punctuation and footnote omitted).

evidence to show that he had a propensity to commit burglaries and to "smear [him] in the eyes of the jury."

The "other acts" evidence at issue here includes the Appellant's guilty plea to a 1990 accusation charging him with committing six separate residential burglaries (i.e., illegally entering a person's "dwelling house" without authority and with the intent to commit a theft[14]) over a two-month period. In the same accusation, the Appellant pled guilty to two felony and three misdemeanor charges of theft by receiving[15] involving the illegal "disposal" of items he knew to be stolen, which included a diamond cluster ring, a 14K diamond ring, and similar items. In addition, the State showed that the Appellant pled guilty to a 1996 indictment that charged him

---

[14] See former OCGA § 16-7-1 (a) (1990) ("A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another[.]").

[15] See former OCGA § 16-8-7 (a) (1990) ("A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner.").

with committing six counts of residential burglary[16] in a single month and one count of burglarizing the office of an apartment building.

Upon notice by the State of its intention to present this evidence, the trial court conducted a series of hearings before finding this evidence admissible for the limited purposes of showing the Appellant's intent, the absence of accident or mistake, and, possibly, motive. At trial, before such evidence was presented to the jury, the court instructed the jury on these specific, limited purposes for which this evidence could be considered.[17] The State then presented certified copies of the Appellant's guilty pleas to the previous crimes and read each count in the 1990 accusation and 1996 indictment to the jury.

(a) OCGA § 24-4-404 (b) ("Rule 404 (b)") applies to the admission of evidence of other acts committed by the defendant and provides, in relevant part, as follows:

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

---

[16] See former OCGA § 16-7-1 (a) (1996).

[17] The court also gave a limiting instruction regarding consideration of this evidence during its final charge to the jury.

Rule 404 (b) "explicitly recognizes the relevance of other acts evidence offered for a permissible purpose" and is therefore "an evidentiary rule of inclusion which contains a non-exhaustive list of purposes other than bad character for which other acts evidence is deemed relevant and may be properly offered into evidence."[18]

In determining the admissibility of "other acts" evidence under Rule 404 (b), the Supreme Court of Georgia has adopted the test set out by the Eleventh Circuit of the United States Court of Appeals.[19]

> Under this test, in order to be admissible, the State must make a showing that: (1) evidence of extrinsic, or other, acts is relevant[20] to an issue

---

[18] *State v. Jones*, 297 Ga. 156, 159 (2) (773 SE2d 170) (2015) (citations omitted).

[19] See id. at 158 (1); *Silvey*, 335 Ga. App. at 386 (1); see also Ga. L. 2011, p. 99, § 1 (not codified) (enacting the new Evidence Code and stating the legislative intent to adopt the Federal Rules of Evidence as interpreted by the United States Supreme Court and Circuit Courts of Appeals, as of January 1, 2013, with any conflicts among the Circuit Courts of Appeals to be resolved by following the Eleventh Circuit Court).

[20] See *Olds v. State*, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016) ("[T]o determine whether such evidence actually is 'relevant' for a particular purpose, we look to OCGA § 24-4-401 ('Rule 401'), which deems evidence relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'") (citation and punctuation omitted).

other than a defendant's character[21]; (2) the probative value of the other acts evidence is not substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of [OCGA § 24-4-403]; and (3) there is sufficient proof so that the jury could find that the defendant committed the act in question. In no case may evidence of other acts be admitted for the sole purpose of proving the character of the accused to show that he acted in conformity therewith.[22]

"[A] trial court's decision to admit other acts evidence will be overturned only where there is a clear abuse of discretion."[23]

(i) As shown above, the trial court admitted the evidence of the Appellant's prior burglaries and thefts for allowable purposes under Rule 404 (b), i.e., to show his intent, the absence of accident or mistake, and motive. Under the first prong of the

---

[21] See OCGA § 24-4-404 (b) (listing permissible purposes for the admission of evidence of other acts).

[22] *Silvey*, 335 Ga. App. at 386 (1) (citations and punctuation omitted), quoting *Jones*, 297 Ga. at 158-159 (1).

[23] *Silvey*, 335 Ga. App. at 386 (1) (citation and punctuation omitted). See also *Graham v. State*, 337 Ga. App. 664, 669 (2) (788 SE2d 555) (2016) ("On appeal, we review the trial court's ruling admitting evidence pursuant to OCGA § 24-4-404 (b) for a clear abuse of discretion, a review requiring the appellate court to make a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness.") (citation and punctuation omitted).

test for admissibility under Rule 404 (b), our Supreme Court has adopted the following analysis for the issue of intent:

> A defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404 (b) evidence absent affirmative steps by the defendant to remove intent as an issue. Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses. Thus, where the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404 (b) test is satisfied.[24]

Here, the Appellant pled not guilty to the charges in this case, thus making intent a material issue, and he failed to take affirmative steps to remove the issue from the case.[25]

---

[24] *Silvey*, 335 Ga. App. at 387 (1) (a), quoting *Bradshaw v. State*, 296 Ga. 650, 656-657 (3) (769 SE2d 892) (2015).

[25] Although the Appellant argues that his intent was not an issue at trial because his primary defense was that no burglary had, in fact, been committed, this argument lacks merit. As in all burglary cases, absent a stipulation of the facts by the Appellant, the State had to prove *both* that a burglary was committed *and* that the Appellant intentionally committed it. See *United States v. Diaz-Lizaraza*, 981 F2d 1216, 1224 (11th Cir. 1993) ("[T]he government may introduce evidence of the defendant's extrinsic acts to prove intent if the defendant does not affirmatively take the question of intent out of contention by stipulating to the requisite intent.") (citations and punctuation omitted). Thus, the defense pursued by the Appellant at trial did nothing

16

Further, the requisite state of mind for committing the burglaries charged in the 1990 accusation and the 1996 indictment is the same as in the instant case, i.e., entering a residence without permission "with the intent to commit a felony or theft therein[.]"[26] Similarly, the intent required to commit a theft – either theft by taking or theft by receiving – is unlawfully obtaining another person's property with the intention of depriving that person of the property.[27] Therefore, the evidence of the other acts committed by the Appellant was clearly relevant in this case to establish his intent, so the first prong of the Rule 404 (b) test was satisfied.[28]

---

to lessen the State's burden of proof.

[26] See OCGA § 16-7-1 (b); see also footnotes 14 and 16, supra.

[27] See OCGA §§ 16-8-2 ("A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."); 16-8-7 (a) ("A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner."); see also footnote 15, supra.

[28] See *Silvey*, 335 Ga. App. at 387 (1) (a). In addition, because we have found that the evidence was relevant to establish intent, we need not analyze whether the evidence was also admissible as to the other identified purposes. See id. at 387 (1) (a), n. 8.

(ii) In addressing the second prong of the test, the trial court must apply the balancing test under OCGA § 24-4-403 ("Rule 403"), which provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "The application of the Rule 403 test is a matter committed principally to the discretion of the trial courts[.]"[29] The exclusion of relevant evidence under this prong, however, "is an extraordinary remedy which should be used only sparingly[,] since it permits the trial court to exclude concededly probative evidence."[30]

Here, the Appellant complains that the State failed to show that there was sufficient similarity between the prior crimes and the instant crimes so that the evidence of the prior crimes was more probative than prejudicial. As with the burglary at issue in this case, however, the evidence showed that all but one of the

---

[29] *Olds*, 299 Ga. at 70 (2) (citation and footnote omitted).

[30] *Silvey*, 335 Ga. App. at 388 (1) (b) (citations and punctuation omitted). See *Hood v. State*, 299 Ga. 95, 103 (4) (786 SE2d 648) (2016) ("The major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.") (citation and punctuation omitted).

18

prior burglaries occurred at *residences*,[31] as opposed to businesses, storage facilities, other types of buildings or structures, railroad cars, tractor trailers, recreational vehicles, boats, planes, etc.[32] Likewise, the prior thefts all involved jewelry, as did the theft in this case.

Further, although the Appellant complains that the prior crimes occurred too long ago to be probative in this case, he has failed to cite to any authority that stands for the proposition that temporal remoteness, standing alone, is a basis for automatically excluding otherwise relevant and admissible evidence. It is true that temporal remoteness is an important factor to be considered when determining whether other acts evidence should be admitted, because it depreciates the probative value of the evidence.[33] However, the United States Court of Appeals for the Eleventh Circuit

> has refrained from adopting a bright-line rule with respect to temporal proximity because decisions as to impermissible remoteness are so fact-specific that a generally applicable litmus test would be of dubious

---

[31] See OCGA § 16-7-1 (a) (1) ("'Dwelling' means any building, structure, or portion thereof which is designed or intended for occupancy for residential use.").

[32] See OCGA § 16-7-1 (a) (2), (b), (c).

[33] See *United States v. Matthews*, 431 F3d 1296, 1311 (V) (11th Cir. 2005).

value. Accordingly[, the Appellant] bears a heavy burden in demonstrating an abuse of the court's broad discretion in determining if an extrinsic offense is too remote to be probative.[34]

Given the facts of this case and the patent similarity between the prior crimes and the instant burglary, the trial court was authorized to find that the Appellant had failed to meet his burden of showing that the prior crimes occurred so long ago that their probative value was outweighed by their prejudicial value.

Finally, given the overwhelming circumstantial evidence concerning the crimes at issue and the probative value of the evidence of the Appellant's prior crimes, we find that any unfair prejudice possibly caused by the introduction of the latter evidence was mitigated by the trial court's limiting instructions.[35] Both when the evidence was presented and in its final charge to the jury, the trial court cautioned that this evidence could only be considered as to the issues of intent, motive, and absence

---

[34] Id. (citations and punctuation omitted).

[35] See *Diaz-Lizaraza*, 981 F2d at 1225; see also *United States v. Edouard*, 485 F3d 1324, 1346 (II) (C) (1) (11th Cir. 2007) ("[A]ny unfair prejudice possibly caused by admitting evidence of [the defendant's] prior [crimes] was mitigated by the [trial] court's limiting instruction to the jury.") (citation omitted).

of accident or mistake in committing the crimes at issue and could not be considered for any other purpose.[36]

We conclude that the Appellant has failed to show that the trial court clearly abused its discretion in finding that the probative value of the evidence of the Appellant's prior convictions was not substantially outweighed by the danger of unfair prejudice.[37]

(iii) Under the third prong of the Rule 404 (b) test, "there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the other acts in question."[38] Here, the State presented certified copies of the Appellant's guilty pleas to the prior charges. This was sufficient proof of the Appellant's commission of the other acts to authorize the admission of this evidence.[39]

---

[36] See *Diaz-Lizaraza*, 981 F2d at 1225.

[37] See *Silvey*, 335 Ga. App. at 388 (1) (b).

[38] *Silvey*, 335 Ga. App. at 388 (1) (c) (citations and punctuation omitted).

[39] See *Scruggs v. State*, 295 Ga. 840, 841 (2) (764 SE2d 413) (2014) (The State proved that the defendant was the perpetrator of the 1995 prior crime by presenting a certified copy of his guilty plea and conviction.); see also *United States v. Calderon*, 127 F3d 1314, 1332 (IV) (11th Cir. 1997) ("It is elementary that a conviction is sufficient proof that [the defendant] committed the prior act [for the purposes of Rule

Consequently, the trial court did not abuse its discretion in admitting the evidence of the prior crimes committed by the Appellant.[40]

(b) The Appellant also contends that the trial court erred in admitting the other acts evidence when the State presented only certified copies of his guilty pleas and did not call any living witnesses to testify about the crimes. He argues that, without testimony to establish the facts surrounding the prior acts, the State failed to show that those acts were sufficiently similar to the crimes charged in the instant case. The cases relied upon by the Appellant, however, were decided before the General Assembly's adoption of the new Evidence Code, which became effective on January 1, 2013.[41] Having concluded in the previous subsection that the evidence of the Appellant's prior crimes met the requirements of the current, three-prong test for admissibility under Rule 404 (b), and considering the patent similarities between the prior crimes and those at issue, we find that this argument presents no reversible error.

---

404 (b)]. The fact that the conviction was based on a guilty plea is inconsequential.") (citations omitted).

[40] See *Silvey*, 335 Ga. App. at 388 (1) (c).

[41] See Ga. L. 2011, p. 99, §§ 1, 101.

3. The Appellant contends that the trial court erred in sentencing him as a recidivist under two separate statutes, OCGA §§ 16-7-1 and 17-10-7, when only the latter provision should have been applied. We disagree.

The record shows that the State filed a pretrial notice of its intent to seek recidivist sentencing under OCGA § 17-10-7 "and/or any recidivist sentencing provisions which may be applicable" in this case. As the Appellant concedes, he has four prior felony convictions: a 1986 guilty plea to felony theft by receiving; a separate 1986 guilty plea to two counts of felony theft by receiving[42]; the 1990 guilty plea to several felony residential burglaries; and the 1996 guilty plea to several felony residential burglaries. Therefore, OCGA § 17-10-7 (a) applies in this case and provides, in relevant part, as follows:

> [A]ny person who, after having been convicted of a felony offense in this state . . . and sentenced to confinement in a penal institution, commits a felony punishable by confinement in a penal institution shall be sentenced to undergo *the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted*, provided that, unless otherwise provided by law, the trial

---

[42] See OCGA § 17-10-7 (d) ("For the purpose of this Code section, conviction of two or more crimes charged on separate counts of one indictment or accusation, or in two or more indictments or accusations consolidated for trial, shall be deemed to be only one conviction.").

judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense.[43]

In order to determine "the longest period of time prescribed for the punishment" of the burglary conviction at issue in this case, the trial court properly looked to the burglary statute, OCGA § 16-7-1 (b), which provides that, "[u]pon the third and all subsequent convictions for burglary in the first degree, the defendant shall be guilty of a felony and shall be punished by imprisonment for not less than five nor more than 25 years." Because it is undisputed that the conviction at issue in this case was the Appellant's third residential burglary conviction, "the longest period of time prescribed for the punishment" of this conviction was 25 years of imprisonment.

Finally, as shown above, it is undisputed that the Appellant has four prior felony convictions. Accordingly, the trial court applied OCGA § 17-10-7 (c), which provides that

> any person who, after having been convicted under the laws of this state for three felonies . . . commits a felony within this state shall, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such

---

[43] (Emphasis supplied.)

conviction and shall not be eligible for parole until the maximum sentence has been served.

As a result, the trial court properly sentenced the Appellant to 25 years of imprisonment without the possibility of parole.

The Appellant argues, however, that the court erred in applying the recidivist provision of the burglary statute, OCGA § 16-7-1 (b), and that, if the court had not applied it, his sentence would have been between one and twenty years of imprisonment.[44] The Appellant relies on *Goldberg v. State*,[45] in which the defendant had three prior burglary convictions, as well as two prior felony convictions for other crimes.[46] In that case, the trial court applied both OCGA §§ 16-7-1 (b) and 17-10-7 (a) when sentencing the defendant to 20 years of imprisonment because, in 2002, when the defendant committed the burglary at issue,[47] OCGA § 16-7-1 (b) provided for a maximum sentence of 20 years of imprisonment for a third burglary

---

[44] See OCGA § 16-7-1 (b) (providing that, for a first conviction of burglary in the first degree, the defendant "shall be punished by imprisonment for not less than one nor more than 20 years.").

[45] 282 Ga. 542 (651 SE2d 667) (2007).

[46] See id. at 545.

[47] See *Goldberg v. State*, 280 Ga. App. 600, 603 (2) (634 SE2d 419) (2006).

conviction,[48] rather than the 25-year sentence provided for in 2014, when the Appellant committed the instant burglary. In affirming the sentence in *Goldberg*, the Supreme Court of Georgia noted that OCGA § 17-10-7 (e) specifically provides that "[t]his Code section is supplemental to other provisions relating to recidivous offenders."[49] The Court held that, by enacting such provision, "the General Assembly has expressly indicated its intent that OCGA § 17-10-7 and other recidivist sentencing provisions, such as OCGA § 16-7-1 (b), be construed harmoniously. Accordingly, they are not conflicting provisions, and each must be interpreted so as to avoid any ambiguity between them."[50] Thus,

> [c]onstruing the two provisions together, the General Assembly intended that a habitual burglar [who has no prior convictions for other felonies] be given the benefit of the trial court's sentencing discretion [under OCGA § 16-7-1 (b)], but it further intended, that a habitual burglar who is also a habitual felon be subject to the imposition of the longest

---

[48] See *Goldberg*, 282 Ga. at 543; former OCGA § 16-7-1 (b) (2002). The General Assembly amended OCGA § 16-7-1 (b) in 2012 to increase the maximum sentence for a third conviction of first degree burglary to 25 years. See Ga. L. 2012, p. 899, § 3-1.

[49] *Goldberg*, 282 Ga. at 544.

[50] Id.

sentence prescribed for the subsequent offense for which he or she was convicted [under OCGA § 17-10-7].[51]

It followed that, because the defendant in *Goldberg* was a three-time convicted burglar in addition to being convicted of two prior felonies, the defendant "was 'more' than just a habitual burglar" to whom *only* the recidivist provision of OCGA § 16-7-1 (b) would apply.[52]

Given the Appellant's prior burglary and non-burglary felony convictions, the same analysis applies in this case. Thus, we find no error in the Appellant's sentence.

*Judgment affirmed. Miller, P. J., and Doyle, P. J., concur.*

---

[51] Id. at 547.

[52] Id. at 545. Accord *Kennedy v. State*, 302 Ga. App. 289, 290 (690 SE2d 255) (2010).