## S12A1743. WISE v. THE STATE.
### (738 SE2d 580)

NAHMIAS, Justice.

Tiffany Wise appeals her conviction for malice murder for beating 88-year-old Mabel Berry to death. Concluding that the evidence at trial was sufficient to support the conviction and that any error in the admission of a police officer's testimony was harmless, we affirm.[1]

---

[1] The victim was killed on the morning of May 3, 2009. On June 24, 2009, Appellant was indicted in Dougherty County for malice murder, felony murder, and aggravated assault, as well as a charge of concealing the death of another that was later nolle prossed. On June 23, 2010, a jury convicted Appellant of all charges. On June 30, 2010, the trial court sentenced Appellant to life in prison without the possibility of parole for malice murder; the felony murder

1. The evidence at trial, viewed in the light most favorable to the verdict, showed the following. On the morning of May 3, 2009, Appellant drove to the victim's house. The victim, who knew Appellant from the Albany Rescue Mission, where the victim had served as coordinator and Appellant had recently lived, let Appellant into the house. Roosevelt Chambers, the victim's next-door neighbor, heard loud thudding noises coming from the victim's house, and his granddaughter Ravyn heard screams and the sound of the victim's dog barking, which was unusual. Ravyn and her grandmother, Constance Chambers, ran next door to check on the victim. Ms. Chambers began knocking on the front door, yelling, "Ms. Berry? Are you okay?" Appellant answered the door, said that one of the victim's friends had "picked her up to go to church," and then shut the door.

Ms. Chambers knew, however, that the victim always drove herself to church, so Mr. Chambers called the police while Ms. Chambers and Ravyn sat on the side porch of their house and watched the victim's house until the police arrived. Ravyn wrote down the license plate number of an SUV that was parked behind the victim's car, which was later matched to a vehicle registered to Appellant's sister. During this time, Ravyn and Ms. Chambers saw only one person leave the victim's house — Appellant, who was wearing the victim's housecoat and who drove away in the SUV. The police found no one present in the victim's house, but they saw signs of a bloody beating and found a bloodstained rock and bloody broken glass. The victim was found dead in her back yard, blindfolded and covered by a sheet. Nearby lay a concrete block with blood and hair on it. The victim had died of blunt force trauma to the head.

After leaving the victim's house, Appellant drove to her mother's house, where she took off the bloody housecoat (which the police later found in the garbage can behind the house). Thinking that Appellant had been attacked, her mother convinced her to go with her sister to the police station and explain what had happened.

When she showed up at the police station, Appellant was interviewed by two detectives after being advised of her *Miranda* rights and signing a written waiver. A video recording of the interview was played at trial. At the outset, Appellant admitted being present when the victim was killed but claimed that a friend named "Herbert Washington" was the killer. After confronting her about the bloody housecoat and showing her crime scene photos, however, Appellant

conviction was vacated by operation of law, and the aggravated assault conviction merged. Appellant timely appealed, and the case was docketed in this Court for the September 2012 term and submitted for decision on the briefs.

changed her story and explained in detail how she alone beat the victim to death with a rock, a large glass bowl, and a concrete block and lied to the neighbors before fleeing in the SUV. Appellant's confession was corroborated by the neighbors' observations, the crime scene evidence, and the forensic examiner's testimony. At trial, Appellant testified and again claimed that someone else — this time, Shavonna Sims — had come with her to the victim's house, killed the victim, and threatened her into lying to the neighbors and the police.

When viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which she was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

2. At trial, the police officer who responded to the neighbor's call testified, "I made contact with the neighbors, Mr. Chambers and his family. And they advised that they had heard their neighbor —." Appellant interrupted with a hearsay objection. The trial court overruled the objection, reasoning that the neighbors had already testified and the purpose of this testimony was to explain why the officer went next door to the victim's house. The officer then testified, "They advised that they heard their neighbor next door screaming and it was unusual and the dog was also barking, which was unusual."

Appellant argues that the trial court erred in overruling her hearsay objection on the ground that the hearsay was being intro-duced to explain the officer's conduct. Appellant relies on *Weems v. State*, 269 Ga. 577 (501 SE2d 806) (1998), where this Court said that, "unless it is the rare instance in which the conduct of an investigating officer is a matter concerning which the truth must be found, it is error to permit an investigating officer to testify, under the guise of explaining the officer's conduct, to what other persons related to the officer during the investigation." Id. at 579.

This is clearly not a case where a police officer tried to smuggle in hearsay from eyewitnesses under the guise of explaining investi-gative conduct. But even assuming that the trial court should have restricted the officer's testimony, any error was harmless. Ravyn Chambers, who testified immediately before the officer, had told the jury that she heard screaming and barking coming from the victim's house, which was unusual. Thus, the challenged hearsay was entirely cumulative of evidence already before the jury — evidence that Appellant did not dispute — and it is highly probable that any error in overruling the hearsay objection did not contribute to the verdict.

See *Harris v. State*, 279 Ga. 522, 525 (615 SE2d 532) (2005) (concluding that the trial court's error in admitting hearsay by two declarants to explain an officer's conduct was harmless because one of the declarants later told the jury the same information). Accordingly, this enumeration of error lacks merit.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 18, 2013.

*Kevin C. Armstrong*, for appellant.

*Gregory W. Edwards, District Attorney, Heather H. Lanier, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine L. Iannuzzi, Assistant Attorney General*, for appellee.