**FIRST DIVISION
BARNES, P. J.,
MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 17, 2018**

# In the Court of Appeals of Georgia

A18A1146. SULLINS v. THE STATE.

MCMILLIAN, Judge.

After a bench trial, Richard Lee Sullins, Jr. was convicted of child molestation, two counts of sexual battery against a child under the age of 16, and cruelty to children in the second degree.[1] In this appeal, Sullins asserts that (1) the evidence was insufficient on Count 4 of the indictment alleging sexual battery against a child under the age of 16 because the undisputed evidence showed that the victim was over the age of 16 during the dates alleged in that count; (2) the trial court committed plain error by allowing and considering inadmissible hearsay evidence concerning the

---

[1] Following his conviction, Sullins filed a motion for new trial, which the trial court denied, and then a motion for out-of-time appeal based on his counsel's ineffectiveness for failing to pursue a timely appeal from the order denying his motion for new trial. The trial court granted his motion for out-of-time appeal, and Sullins filed the present appeal.

victim's prior consistent statements; and (3) the trial court wrongly convicted Sullins of cruelty to children based on an invalid legal theory, thus violating his right to due process. As more fully set forth below, we now affirm in part, reverse in part, and remand for a new trial.

The evidence, construed to support the jury's verdict,[2] shows that in January 2016, D. K. made a disclosure to a friend, and the possible sexual abuse was reported to D. K.'s teacher. The teacher reported the conversation to the school guidance counselor, and the guidance counselor spoke with D. K. The guidance counselor testified that D. K. told her that something "bad" had happened to her with Sullins, who D. K. identified as her "mom's brother,"[3] and that Sullins had touched her in her "private zones," which she identified as between her legs, on multiple occasions and that he had touched her underneath her clothes.

---

[2] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[3] The record shows that D. K.'s mother was killed in a car accident when D. K. was one month old and she was raised by her grandparents whom she referred to as her parents, and we will also throughout this opinion. The transcript also shows that D. K. suffered a head injury in the accident that killed her mother, which resulted in certain cognitive difficulties. D. K. testified at trial that she has memory issues and that she was in a special education class.

2

The guidance counselor reported the conversation to the school resource office, who contacted the Floyd County Police Department. A police investigator went to D. K.'s house to speak to D. K.'s parents and a day or so later, the investigator took D. K. to Harbor House, a child advocacy center, where a forensic interview was conducted. Following that interview, Sullins was arrested and ultimately charged with the crimes at issue in this appeal.

D. K. testified about the sexual abuse at trial. She said that Sullins had done things to her that made her feel "uncomfortable" and that "felt different." D. K. recounted a specific instance when she was sitting in the dining room watching television and Sullins sat down with her and proceeded to slowly put his hands on her "private area"[4] and then slowly went up and touched her breast, and she recalled other instances where Sullins had touched her private areas with his hands. She described a separate event where Sullins sat on top of her one morning while she was watching television and "humped" her. D. K. also described another time when Sullins was sitting next to her in the kitchen and he began touching her in her private area.

---

[4] At trial, D. K. circled the breasts and front vaginal area on a stick figure drawing to show what she considered her private areas.

D. K.'s recorded interview at Harbor House was also played for the jury at trial. In addition to telling the interviewer about the abuse that occurred when she was drawing a picture of a flower in the kitchen and the time when Sullins got on top of her and went back and forth while she was watching television, D. K. also recounted additional instances and details concerning the abuse, including that during some of the inappropriate touchings, Sullins rubbed up and down and around on her private area. She also repeatedly and emphatically said that she does not like to be touched on her private area, butt, or breasts, and that she did not want Sullins to come to her house anymore because of the abuse. She told the interviewer that the most recent incident was when she was drawing the flower in the kitchen when she was 16 years old and that she remembered another incident when she was 15 years old and an incident in the living room when she was 13 years old.

D. K.'s mother also testified at trial. She said that Sullins, who lived in a mobile home several doors down from her house, was a frequent visitor, particularly in the past year after his water had been disconnected and he would come to their house to eat and shower. D. K.'s mother testified that D. K. had not mentioned the assaults prior to the disclosure at school, but after the police visit, D. K. told her that the first improper touching occurred when she was around 14 years old. D. K.'s

4

mother also testified that she talked to Sullins on the telephone while he was in jail, and he asked her to talk to D. K. and tell her to say that nothing happened so that he could be released from jail and get some help. Multiple telephone conversations between Sullins and D. K.'s mother were then played for the jury, during which Sullins was clearly attempting to persuade his sister to get D. K. to recant her testimony.

Sullins also testified at trial. He denied the inappropriate touchings and tried to shift the blame to D. K. by saying that she had touched and hugged him inappropriately in the past. He also testified that on one occasion D. K. got on top of him while he was sleeping but then she ran away. He also tried to paint D. K. as a liar because of an incident when she lied about who made the coffee and because she had been caught taking money from her mother. He also testified that he had helped D. K. draw a flower a few weeks before he was arrested, which was consistent with D. K.'s testimony concerning when the most recent sexual battery occurred.

At the end of the testimony, the trial judge stated on the record that she found D. K. "to be very credible and believable." She further noted that Sullins' own testimony established that the sexual battery as alleged in Count 4 happened between the dates alleged in the indictment, and found him guilty on all counts, ultimately

5

imposing a sentence of a total of 35 years, to serve 20, with the remaining 15 on probation.

1. We first address Sullins' argument that the trial court committed plain error by admitting D. K.'s videotaped forensic interview, the testimony of the forensic interviewer about the interview, and the testimony of various witnesses who testified about D. K.'s out-of-court statements concerning the sexual abuse. Sullins argues this evidence was inadmissible under the Child Hearsay Statute, OCGA § 24-8-820, because the undisputed evidence shows that D. K. was 16 years old at the time she made the outcry statements and that the hearsay evidence was not admissible under any other exception.[5] The State concedes that D. K. was 16 years old at the time of the outcry, but argues that Sullins' remedy, if any, was to assert an ineffective assistance of counsel claim due to trial counsel's failure to object at trial, and that by failing to raise an ineffectiveness claim he has waived his right to raise any error related to the improper admission of the evidence on appeal. The State is incorrect.

---

[5] OCGA § 24-8-820 applies to offenses occurring on or after July 1, 2013. Ga. L. 2013, p. 222, § 21/HB 349. Although the date ranges included in several of the charges include dates before July 1, 2013, neither party asserts that the prior versions apply. In any event, under the prior statute, the child had to be under the age of 14, not 16, and the victim's statements here would not qualify under either version.

Where an accused fails to object to the introduction of hearsay evidence at trial and does not assert that counsel was ineffective in failing to do so, we may still review for plain error under OCGA § 24-1-103 (d), which provides that "[n]othing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court." *Mosley v. State*, 298 Ga. 849, 851 (2) (a) & (b) (785 SE2d 297) (2016) (unobjected to hearsay reviewed for plain error); *In the Interest of E. B.*, 343 Ga. App. 823, 829 (3) (a) (806 SE2d 272) (2017) ("Because [juvenile defendant] did not object to the hearsay testimony, we review the admission of this evidence for plain error."). In reviewing for plain error, we must consider four factors.

> First, there must be an error or defect – sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted.) *Gates v. State*, 298 Ga. 324, 327 (3) (781 SE2d 772) (2016). See also *State v. Kelly*, 290 Ga. 29, 32-33 (2) (a) (718 SE2d 232) (2011). Thus, to establish plain error, Sullins must not only show that the admission of the outcry testimony, forensic interview recording and related testimony were improper, but he also "has the burden to make an affirmative showing that the error probably did affect the outcome below." (Citation and punctuation omitted.) *Hampton v. State*, 302 Ga. 166, 168 (2) (805 SE2d 902) (2017). "Moreover, as our Supreme Court has emphasized, satisfying the plain-error standard 'is difficult, as it should be[,]'" with the "burden of establishing plain error fall[ing] squarely on the defendant." (Citations omitted.) *State v. Crist*, 341 Ga. App. 411, 415 (801 SE2d 545) (2017).

The first step requires us to consider whether it was obvious error to admit the evidence. Hearsay is defined in OCGA § 24-8-801 (c) as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." "Generally speaking, '[u]nless a witness's veracity has affirmatively been placed in issue, the witness's prior consistent statement is pure hearsay evidence, which cannot be admitted merely to corroborate the witness, or to bolster the witness's credibility in the eyes of the jury.'" (Citation omitted.) *Laster v. State*, 340 Ga. App. 96, 98 (1) (796 SE2d 484) (2017). Although

8

"[t]he Child Hearsay Statute . . . is a legislatively-created exception to the general rule prohibiting such hearsay evidence[,]" the current version of the statute requires, among other things, that the child be under the age of 16 at the time the statements were made. Id. at 98-99; OCGA § 24-8-820. Here, it is undisputed that D. K. was over the age of 16 when she made the outcry statements and the forensic interview was conducted, and thus Sullins is correct that this evidence should not have been admitted under the Child Hearsay Statute. See *Darden v. Sate*, 206 Ga. App. 400, 401 (1) (425 SE2d 409) (1992) (physical precedent only) ("The clear wording of the statute indicates that the age of the child at the time the statements were made is determinative of their admissibility under the statute.") (citation omitted).

We also note that it does not appear that the evidence was subject to any other hearsay exception. For example, Sullins made only a general attack on the victim's veracity and did not raise any issue concerning recent fabrication, improper influence, or improper motive. Under these circumstances, our law is clear that the evidence was not admissible as a prior consistent statement of the victim. See OCGA § 24-6-613 (c); *Silvey v. State*, 335 Ga. App. 383, 389 (2) (780 SE2d 708) (2015).[6] Because we

---

[6]     [A] prior consistent statement shall be admissible to rehabilitate a witness if the prior consistent statement

9

discern no basis for the admission of this hearsay evidence, we must conclude that it was clear and obvious error to admit the forensic interview and witnesses' testimony about the victim's out-of-court statements. See *Blackmon v. State*, 336 Ga. App. 387, 392-93 (785 SE2d 59) (2016) (testimony about outcry statements inadmissible where victim over the age specified in the Child Hearsay Statute at the time of the outcry and prior consistent witness statement exception did not apply); *Forde v. State*, 289 Ga. App. 805, 807-08 (658 SE2d 410) (2008) (in the context of ineffective assistance of counsel, counsel performed deficiently by failing to raise a hearsay objection to the

> logically rebuts an attack made on the witness's credibility. A general attack on a witness's credibility with evidence offered under OCGA § 24-6-608 [evidence of character and conduct of a witness] or 24-6-609 [impeachment by evidence of conviction of a crime] shall not permit rehabilitation under this subsection. If a prior consistent statement is offered to rebut an expressed or implied charge against the witness of recent fabrication or improper influence or motive, the prior consistent statement shall have been made before the alleged recent fabrication or improper influence or motive arose.

(Punctuation omitted.) *Silvey*, 335 Ga. App. at 389 (2), quoting OCGA § 24-6-613 (c).

10

admission of victim's statement in a videotaped interview where victim was over 16 years of age at the time the statement was made and content of recording was not admissible as a prior consistent statement).

Further, there is nothing to suggest that Sullins affirmatively waived this error. Rather, it appears that the prosecuting attorney, defense counsel, and the trial court may have tried this case under the mistaken belief that the victim was under 16 years of age when the outcry was made. Not only did no one object or point out the victim's age when the forensic interview and other hearsay statements were admitted but also in Count 4 of the indictment, Sullins was charged with sexual battery against a child under the age of 16 based on conduct alleged to have occurred between certain dates even though the victim was older during that time frame, and no one raised this issue before or during trial.[7] Accordingly, it does not appear there was an affirmative waiver in this case.

The next prong of the plain error test requires us to consider whether the error affected the appellant's substantial rights, which generally means the appellant must demonstrate that it affected the outcome of the trial court proceedings. As an initial

[7] We note that in Count 2 of the indictment, Sullins was charged with sexual battery against a child under the age of 16 but that count alleged that the contact was made during a time period when the victim was under the age of 16.

matter, it is important to note that this trial was conducted as a bench trial, and absent strong evidence to the contrary, it must be presumed that a judge in a bench trial "sifted the wheat from the chaff and selected legal testimony from that which is illegal and incompetent, unless from the judgment itself it appears that consideration was given[.]" *Jones v. State*, 318 Ga. App. 614, 618 (5) (734 SE2d 450) (2012). *Moore v. State*, 319 Ga. App. 696, 700 (2) (738 SE2d 140) (2013) ("absent a strong showing to the contrary, we must presume that in a bench trial, the judge has sifted the wheat from the chaff and selected the legal testimony from that which is illegal and incompetent.") (punctuation and citation omitted). However, as described above, the circumstances here strongly indicate that this case was tried under a mistaken belief about the victim's age, and the trial judge may have believed the hearsay evidence to be admissible under the Child Hearsay Statute. This is demonstrated by, among other things, that during the trial the trial court otherwise precluded witnesses from testifying to hearsay. Thus, we presume that the trial judge considered all evidence she believed to be both relevant and admissible including the forensic interview and other hearsay statements. See *Wright v. State*, 338 Ga. App. 216, 226 (2) (789 SE2d 424) (2016).

12

Accordingly, we cannot say that the trial judge did not consider the victim's outcry statements and forensic interview in finding Sullins guilty, and we also cannot say that the trial court's consideration of this evidence did not likely affect the outcome of the proceedings. The State's case was based for the most part on the victim's outcry and subsequent forensic interview and testimony at trial and the hearsay statements recounted by other witnesses. And the hearsay was not merely cumulative of the victim's trial testimony.[8] The victim provided much greater detail about the sexual abuse during the forensic interview than she did in her testimony at trial,[9] and also provided time frames when various specific instances of abuse occurred, which she did not provide in her testimony. The mother also testified the victim told her the first molestation occurred when she was around the age of 14, which was critical to a finding of guilt on the charges that allegedly occurred before the victim turned 16 as set out in Counts 1 and 2 of the indictment. Thus, even though

---

[8] Cf. *Johnson v. State*, 294 Ga. 86, 89 (3) (750 SE2d 347) (2013) (hearsay testimony harmless where merely cumulative of properly admitted testimony); *Wise v. State*, 292 Ga. 447, 449 (2) (738 SE2d 580) (2013) (admission of hearsay harmless where merely cumulative of other properly admitted evidence).

[9] A child victim's somewhat abbreviated direct testimony is not uncommon in these types of cases where the State would anticipate that the forensic interview would be admitted under the Child Hearsay Statute.

13

the victim's testimony standing alone may have been sufficient to convict Sullins, we cannot say that the victim's other, out-of-court statements did not likely affect the verdict. Accordingly, under the circumstances of this case, we conclude that Sullins has met his burden under that prong of the plain error analysis.[10]

Under the fourth and final prong, an appellate court "has the discretion to remedy the error" and this discretion should be exercised "only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." (Punctuation and emphasis omitted.) *Kelly*, 290 Ga. at 33 (2) (b). Based on our review of the transcript and circumstances surrounding the case, we find the error here meets this criteria and conclude that the error must be remedied by affording Sullins the opportunity for a new trial.

3. Because Sullins must be retried, it is unnecessary for us to consider his remaining enumerations of error. However, we note that with the exception of failing to prove that the victim was under 16 years of age so as to authorize a felony sentence for sexual battery as set out in Count 4 of the indictment, see OCGA § 16-6-22.1 (d),

---

[10] We note that in convicting Sullins, the trial judge found the victim to be "very credible and very believable." However, we do not know if the trial judge was referring only to the victim's testimony or whether she was also referring to the victim's out-of-court statements, including her forensic interview.

14

the evidence presented at trial was otherwise sufficient to authorize Sullins'

convictions and he may be retried for those offenses.

*Judgment affirmed in part, reversed in part, and remanded for a new trial.*

*Barnes, P. J., and Reese, J., concur.*