**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

June 29, 2021

# In the Court of Appeals of Georgia

A21A0035. CASTANEDA v. THE STATE.

PHIPPS, Senior Appellate Judge.

A jury found Francis Santos Castaneda guilty of two counts of child molestation. Following the denial of his motion for new trial, Castaneda filed this appeal. He asserts that the trial court erred in admitting the victim's prior consistent statements and that he received ineffective assistance of trial counsel. We find that the trial court erred in admitting the victim's prior recorded interview with the detective, and because we cannot conclude that the error was harmless as a matter of law, we reverse Castaneda's judgment of conviction. Based on this conclusion, we decline to address Castaneda's other enumerations of error.

We review a trial court's refusal to grant a new trial under the same standard as that used when a defendant challenges the sufficiency of the evidence: "[T]he

relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jones v. State*, 340 Ga. App. 568, 568 (1) (798 SE2d 87) (2017) (citation and punctuation omitted). "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the state's case, the jury's verdict will be upheld." Id. (citation and punctuation omitted).

So viewed, the evidence shows that the victim was 11 or 12 years old when her parents divorced. She lived with Castaneda, her father, when she was in middle school. The victim testified about the molestations she endured while at her father's house, "at least once a week for a while, until [she] was 16[.]" In February 2015, when the victim was twenty years old, she left college and began seeing a counselor for depression, anxiety, and panic attacks. The victim informed the counselor during one of her sessions that her father had molested her when she was 11 or 12 years old, and the counselor described some of the molestation in her testimony. The counselor encouraged the victim to report the abuse to law enforcement, and the victim contacted police in May 2015.

The responding officer spoke to the victim and her mother, and the officer escalated the case to the special victims unit. The officer testified regarding what the victim told her. Subsequently, a detective with the special victims unit interviewed the victim, and a video-recording of that lengthy interview was played for the jury.

The jury found Castaneda guilty of two counts of child molestation. Castaneda filed a motion, which he later amended, for new trial. The trial court denied the motion, and this appeal followed.

1. Castaneda first argues that the trial court erred in permitting the jury to hear the video-recorded interview the victim gave to the detective.[1] According to Castaneda, the video-recorded interview repeated the allegations of abuse over and over, contained leading and presumptive questions, and expanded on the victim's allegations to include claims not contained in her trial testimony or the indictment. He argues convincingly in his appellate brief that the victim's direct examination at trial spanned a mere 28 pages, with far fewer related to the actual sexual abuse allegations, and the State improperly bolstered its case by introducing through the

---

[1] According to Castaneda, the interview lasted one hour and 38 minutes. The redacted video played for the jury lasted 43 minutes.

3

victim's 43 minute video-recorded interview not only cumulative, but substantial substantive evidence without meeting the requirements of OCGA § 24-6-613 (c).

The record shows that prior to trial, the State filed a motion in limine to admit prior consistent statements made by the victim to a number of witnesses, including the detective, the responding officer, and the victim's counselor. The State initially relied on *Donaldson v. State*, 244 Ga. App. 89, 90-91 (3) (534 SE2d 839) (2000), to support its argument that Castaneda's "not guilty" plea, standing alone, placed the veracity of the victim and her version of the events at issue, thus permitting introduction of the victim's prior consistent statements. During oral argument on the motion, defense counsel responded that she believed the State's motion was "within the legal bounds" and that she could not object to it. The trial court therefore granted the State's motion to admit the victim's prior consistent statements.

Subsequently, while discussing evidence of prior difficulties, the State informed the trial court that it expected to play the victim's entire video-recorded forensic interview with the detective. Castaneda's counsel apologized for misunderstanding that the State wanted to play the entire interview the previous day, and counsel stated that while she did not have an issue with the detective testifying

4

as to what the victim told him, she did object to the playing of the entire forensic interview. According to defense counsel,

> [t]he basis for the objection is that the purpose of allowing consistent statements is to show consistent statements. It's not to let them hear her testify all over again. So if there are issues in her statement where she is impeached or, you know, things are shown to be contradicted, then those -- I guess those portions of the interview would be appropriate to show as consistent statements. I don't think the State gets free reign to just play an interview. This is not a child victim. This is not a situation where we're dealing with child hearsay. This is an adult. She was adult when she was interviewed.

The State countered that the video-recorded forensic interview was a prior consistent statement, and the trial court had already ruled that it was admissible. The trial court postponed ruling at that time, indicating that the parties could revisit the issue later.

Prior to swearing in the jury, the State again raised the issue of playing the victim's entire video-recorded interview for the jury, asserting that the recording is the "purest form of a prior consistent statement" because it is hearing the statement from the victim herself rather than through the detective. Defense counsel argued that although the detective could testify as to what the victim told him during the interview, playing the entire video-recorded interview would amount to improper bolstering of an adult witness and violate the continuing witness rule. The trial court

5

ruled that the victim's video-recorded interview with the detective could be played for the jury.

The issue was raised again following the victim's testimony, when defense counsel argued that a prior consistent "statement" does not include a nearly two hour video-recorded interview, that the video-recorded interview constituted hearsay and improper bolstering, and that the video-recording was not redacted sufficiently. Defense counsel further argued that the recorded interview was not admissible as a prior consistent statement because any improper motive or improper influence occurred prior to the victim's video-recorded interview with the detective. The State, on the other hand, argued that defense counsel's cross-examination of the victim about her meeting with the district attorney opened the door to the playing of the recorded interview, and the entire interview should be admitted with a limiting instruction. The trial court ruled that "fabrication [had] been put at issue" and that the recorded interview could be admitted into evidence and played for the jury.

Subsequently, the victim's redacted 43 minute video-recorded interview with the detective was played for the jury, over objection, during the detective's testimony. Castaneda asserts this ruling was erroneous. "We review a trial court's ruling on the admission of evidence under an abuse of discretion standard[,]" *Gonzalez v. State*,

6

350 Ga. App. 297, 303 (3) (829 SE2d 385) (2019) (citation omitted), and we find that the trial court abused its discretion in admitting the victim's video-recorded interview with the detective in this case.

It is well settled that an out-of-court statement offered for the truth of the matter asserted "shall not be hearsay if the declarant testifies at the trial or hearing, is subject to cross-examination concerning the statement, and the statement is admissible as a . . . prior consistent statement under Code Section 24-6-613[.]" OCGA § 24-8-801 (d) (1) (A). Here, there is no dispute that the adult victim testified at trial and was available for cross-examination. Accordingly, the dispositive question is whether the victim's video-recorded forensic interview was admissible as a prior consistent statement under OCGA § 24-6-613. Under that Code Section,

> [a] prior consistent statement shall be admissible to rehabilitate a witness if the prior consistent statement logically rebuts an attack made on the witness's credibility. A general attack on a witness's credibility with evidence offered under Code Section 24-6-608 [evidence of character and conduct of witness] or 24-6-609 [impeachment by evidence of conviction of a crime] shall not permit rehabilitation under this subsection. If a prior consistent statement is offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive, the prior consistent statement shall have been made before the alleged recent fabrication or improper influence or motive arose.

OCGA § 24-6-613 (c).

7

The Supreme Court of Georgia recently explained that this statute both codifies our pre-2013 approach to the introduction of prior consistent statements and broadens the admissibility criteria for prior consistent statements:

> While the final sentence of the Code section effectively codifies our prior decisional law, the first two sentences expand the admissibility criteria to cover prior statements offered to rehabilitate a witness against *any* attack on a witness' credibility, other than that based on character or prior convictions, so long as the prior statement "logically rebuts" that attack.

*McGarity v. State*, __ Ga. __, __ (3) (856 SE2d 241) (2021) (citations omitted; emphasis in original). According to the Supreme Court,

> it is clear that a prior consistent statement will be admissible only if (1) the witness' credibility has been attacked, by some means other than impeachment by evidence of character or prior convictions; and (2) the prior statement "logically rebuts" that attack. Further, if the attack is by a charge of recent fabrication or improper influence or motive, a prior statement may "logically rebut" the attack only if it was made before the alleged fabrication, influence, or motive came about.

Id. at __ (3). We, therefore, must determine not only whether Castaneda impugned the victim's credibility by charging her with recent fabrication or improper influence or motive, but also whether he attacked the victim's credibility on other proper grounds and whether her prior consistent statement logically rebutted that attack.

8

(a) *General attack on the victim's credibility*. We first turn to the questions surrounding a general attack on the victim's credibility; specifically, whether Castaneda attacked the victim's credibility by some means other than impeachment by evidence of character or prior convictions, and whether her prior statement "logically rebutted" that attack. Our review of the record shows that Castaneda did properly attack the victim's credibility, but the record does not support a finding that the victim's redacted 43 minute video-recorded interview with the detective logically rebutted the attack.

During opening argument, defense counsel stated that it was going to be the jury's job to "assess the credibility of 2 very important adults[:]" the victim and the defendant. Defense counsel agreed with the State's attorney that the case was going to boil down to what the jury believed, and she admonished the jury to listen to the witnesses and whether their testimony is "consistent with what they've testified to previously or the statements that they've given previously[.]" According to defense counsel, the victim's "story" about being abused "has been told by one person and one person alone, and she's repeated that story, and you will hear what she told her mother and her sister and her therapist and the detective and the responding officer."

9

During closing argument, defense counsel attempted to point out the differences between the victim's trial testimony and her interview responses:

> [T]here seems to be some differences from -- from the interview in 2015 to the testimony in 2019. She talks about being touched on her breasts and then her vagina, and then we get trial testimony where she -- or I'm sorry -- the interview testimony where she gives an account of his hand being down her pants, and she realizes that she's having her period. So then he touched her breasts. There's just some variations in those details, some inconsistencies in those details.

Regarding another incident, defense counsel argued that in 2015 the victim did not give details to the detective. Defense counsel then stated: "[W]hen we start to have those inconsistencies, we start to wonder, well, maybe is she remembering a memory or is she remembering a story?" Specifically, defense counsel argued:

> [T]hose are the kind of things, when [the State] gets up and says you should believe her because she's told the same story, she's told the same story in 2015 and she told the same story to her counselors and she told the same story to -- to the -- to the intake officer, Officer Herrera or Deputy Herrera. She told the same story to Detective Leach. Well, she didn't really. And when she's telling us that these are the details she's remembered and those details change, well, how are -- how are you supposed to say that that's consistent? How are you supposed to find that that's consistent?

Defense counsel then addressed additional inconsistencies in the victim's testimony. "I don't want to call [the victim] a liar either, but I don't think she's telling the truth, and I don't believe the State has met its burden with her truth." "[T]hink about the

10

testimony of these 2 people in the he-said, she-said that we've been talking about for the last 2 days." Defense counsel concluded by pointing to all of the doubt in the case, including the victim's inconsistent statements and the lack of corroboration of her statements.[2]

Defense counsel's statements were attacks on the victim's general credibility by some means other than impeachment by evidence of character or prior convictions. Thus, her prior consistent statement to the detective was admissible if it "logically rebutted" the credibility attack. *Walters v. State*, 335 Ga. App. 12, 17 (780 SE2d 720) (2015); accord *Wilson v. State*, 351 Ga. App. 794, 799 (3) (b) (833 SE2d 175) (2019). Castaneda's trial counsel argued, "in order for [the prior consistent statement] to be admissible, [it] would have to be related to her testimony that she gave on the witness stand[,]" and, here, "[t]he victim provided much greater detail about the sexual abuse during the forensic interview than she did in her testimony at trial and also provided time frames when various specific incidents of abuse occurred, which she did not provide in her trial testimony." We are constrained to agree.

---

[2] "Although some of these credibility attacks occurred after [the victim's] prior consistent statement was introduced through [the detective's] testimony, a prior consistent statement may be admissible if the testifying witness's credibility was 'eventually attacked' at a later point in the trial." *Walters v. State*, 335 Ga. App. 12, 17, n. 4 (780 SE2d 720) (2015) (citations omitted).

This Court has thoroughly reviewed the victim's lengthy redacted video-recorded interview, which was conducted through numerous leading questions, and finds that it was not cumulative of the victim's extremely brief trial testimony, but provided much greater detail about the sexual abuse and when the incidents occurred. The interview also included testimony about other acts not alleged in the indictment or at trial, such as emotional and verbal abuse against not only the victim, but her siblings and mother, testimony about the victim's acts of cutting herself, testimony that the victim heard Castaneda watching what sounded like porn, testimony that Castaneda repeatedly pinched her nipples and grabbed her butt, testimony that the victim slept in sweat pants to make it harder for Castaneda to touch her, testimony that Castaneda would not let the victim eat because he wanted her to wrestle in a lower weight class, and testimony about Castaneda's abusive characteristics. We agree with defense counsel that the 43 minute video-recorded interview in this case does not "logically rebut" Castaneda's general attack on the victim's credibility. The introduction of the video-recorded interview was simply "a chance for the victim to testify again to stuff that she wasn't asked about on direct examination[,]" and the trial court erred if it admitted the recording on this ground.

However, although the State generally argues that the victim's credibility was placed in issue because defense counsel made it clear that her primary defense was to challenge the credibility of the victim, it does not appear that either the State or the trial court actually addressed or considered whether the victim's video-recorded interview with the detective logically rebutted an attack on the victim's credibility under the first portion of OCGA § 24-6-613 (c). In fact, the State does not address in its appellate brief how the lengthy video-recorded interview logically rebutted any general attack which defense counsel may have done during opening and closing arguments.[3] Instead, the State argued and the trial court based its admission of the victim's video-recorded interview on the ground that defense counsel implied during cross-examination that the victim's testimony may have been the result of recent fabrication or improper influence or motive. Accordingly, we turn to the questions of

[3] The State relies on *Donaldson v. State*, 244 Ga. App. 89, 91 (3) (534 SE2d 839) (2000), to support its argument that Castaneda's entry of a guilty plea, alone, was sufficient to allow for the admission of the victim's prior consistent statement. Indeed, this Court held in *Donaldson* that the victim's prior consistent statement to a sexual assault nurse was admissible because "[t]he entry of [the defendant's] 'not guilty' plea placed the veracity of the victim and her version of events at issue." Id. Having carefully re-examined Division 3 in *Donaldson*, we conclude that its reasoning cannot be sustained. Accordingly, we overrule Division 3 of *Donaldson* and specifically note that OCGA § 24-6-613 (c) now codifies the criteria used to determine the admissibility of a prior consistent statement. See *Grant v. State*, 326 Ga. App. 121, 128 (4), n. 4 (756 SE2d 255) (2014).

13

whether Castaneda, in fact, challenged the victim's veracity by charging her with recent fabrication or improper influence or motive, and whether the trial court properly admitted the video-recording on this ground.

(b) *Recent fabrication or improper influence or motive*. As the Supreme Court of Georgia explained, the last sentence in OCGA § 24-6-613 (c) codifies our prior decisional law regarding prior consistent statements. *McGarity*, __ Ga. at __ (3). Under that law, "a witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement only if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination." *Cowart v. State*, 294 Ga. 333, 339-340 (4) (a) (751 SE2d 399) (2013) (citation and punctuation omitted). "But even then, to be admissible to refute the allegation of recent fabrication, improper influence, or improper motive, the prior statement must predate the alleged fabrication, influence, or motive." *Dimauro v. State*, 341 Ga. App 710, 725 (5) (801 SE2d 558) (2017) (citation and punctuation omitted), overruled on other grounds by *State v. Lane*, 308 Ga. 10, 17, 23-24 (838 SE2d 808) (2020). "Unless a witness's veracity has affirmatively been placed in issue, the witness's prior consistent statement is pure hearsay evidence, which cannot be admitted merely to corroborate the witness, or to bolster the witness's credibility in

14

the eyes of the jury." *Cowart*, 294 Ga. at 340 (4) (a) (citation omitted). See also *Baugh v. State*, 276 Ga. 736, 738 (2) (585 SE2d 616) (2003) ("When there are no allegations of recent fabrication, or improper influence or motive on cross-examination, the prior consistent statement is hearsay evidence improperly admitted to bolster the witness's credibility in the eyes of the jury.") (citation and punctuation omitted).

Here, the State argued below and the trial court agreed that defense counsel charged the victim with recent fabrication or improper influence or motive, sufficient to permit admission of the victim's lengthy video-recorded interview with the detective as a prior consistent statement, based on the following colloquy:

> Q. After you stopped seeing Ms. Crawford, you stopped seeing Dr. Martin, you are interviewed by Detective Leach in – if I said the spring, May of 2015? Do you recall that interview?
> A. Yes.
> Q. And since that time, have you had any other contact with law enforcement since that interview at this time?
> A. No.
> Q. So the last time you've spoken with anybody –
> A. He -- he spoke when my father got arrested. I've been in contact on and off with the D.A.'s office since then.
> Q. Okay. Tell me about that. How frequently have you talked to the D.A.'s office?
> A. Once about 3 years ago. They had called me in to talk about the case. I guess they were just starting to look at it. And then more frequently the last 6 months.

15

Q. Okay. And prior to your testimony today, did you, were you given an opportunity to watch the -- watch the video of the interview that you gave with Detective Leach?
A. Yes.
Q. And were you given a copy of his written report, by any chance, to review?
A. Not the written report.
Q. Okay. And when did you most recently review the interview that you did with Detective Leach?
A. About a week ago.
Q. And prior to that, again, had -- I think you said you had a discussion with the D.A.'s office about 3 years ago?
A. Yes.
Q. And then, again, were they making contact to discuss the sum and substance of -- of your -- of the charges or just to keep -- keep in touch? Hey, where are you living? Where are you?
A. They were keeping in touch with me. The talked the next steps a little bit. They mentioned that I would be watching the interview again with Detective Leach.

In its order denying Castaneda's motion for new trial, the trial court concluded that the above exchange "questioned the victim concerning her meeting with the District Attorney's office and her recent review of her forensic interview" and "implied that the meeting and review might have shaped the victim's testimony and raised the issue of recent fabrication, improper influence, or improper motive." Contrary to the State's assertion and the trial court's finding, this colloquy does *not* imply recent fabrication, improper influence, or improper motive.

16

While the cross-examination elicited testimony regarding when the victim spoke with the district attorney's office and viewed her prior video-recorded interview, potentially indicating that she refreshed her recollection, it did not amount to a comment regarding coercion, fabrication, or improper influence and motive by the district attorney or anyone else regarding the victim's trial testimony. Compare *Kendricks v. State*, __ Ga. App. __ (855 SE2d 652) (2021) (1) (a) (victim's veracity placed in issue where defense attorney extensively questioned victim about whether the details of her story were consistent each time she told someone what happened and asked victim whether she mentioned to anyone certain details to which she testified at trial); *Sawyer v. State*, 308 Ga. 375, 385 (2) (c) (839 SE2d 582) (2020) (witness's prior consistent statements were admissible to rehabilitate the witness after she was questioned on cross-examination about fabricating her story and specifically asked if she was lying in her prior statement or at trial); *Puckett v. State*, 303 Ga. 719, 722 (3) (814 SE2d 726) (2018) (psychologist could testify to victim's prior consistent statements where defense counsel asked victim if anyone told him what to say and questioned whether the victim might have been fabricating his recent story on direct examination); *Dorsey v. State*, 303 Ga. 597, 603 (3) (814 SE2d 378) (2018) (admission of witness's prior consistent statement was proper where, while

17

cross-examining witness, defense counsel implied that witness fabricated his testimony and suggested that witness's trial testimony and his prior statement were inconsistent); *Cobb v. Hart*, 295 Ga. 89, 90-91 (2) (757 SE2d 840) (2014) (forensic interview was admissible as a prior consistent statement when defense counsel posed questions on cross-examination implying that the victim met and colluded with appellant's adult niece, who had testified that appellant molested her as a child, to make their trial testimonies more consistent with each other); *Dimauro*, 341 Ga. App. at 725-726 (5) (prior consistent statement was admissible because, even though defense counsel did not directly accuse victim of lying, her veracity was challenged by questions eliciting the discrepancies between her trial testimony and her prior grand jury testimony and by questions about her failure to report earlier).

The State argues that this case is "nearly identical" to *Jones v. State*, 340 Ga. App. 568, 570-571 (2) (798 SE2d 87) (2017), where this Court held that the trial court did not err in permitting outcry witnesses to testify as to the victim's prior consistent statements. In *Jones*, however, this Court noted as follows:

> During her cross-examination of [the victim], [defendant's] trial counsel challenged the veracity of [the victim's] trial testimony and questioned her about a meeting between her and the district attorney that had taken place shortly before trial, implying that the meeting might have shaped [the victim's] testimony.

Id. at 571 (2). Here, Castaneda's trial attorney did not specifically question the victim about her meetings with the district attorney, and nothing in the trial attorney's questions implied that any such meetings might have shaped the victim's testimony. In fact, defense counsel consistently argued that any fabrication or undue influence and motive occurred prior to the victim's outcry and interview with the detective.

This case appears more aligned with *Johnson v. State*, 328 Ga. App. 702, 706 (2) (760 SE2d 682) (2014), where this Court found that the trial court erred in admitting a victim's prior consistent statement to an officer. Specifically, we noted that "[t]he State did not elicit testimony from the trooper about [the victim's] statements to rehabilitate her after the defense attacked her veracity; instead, the State elicited the testimony during its direct examination of the witness simply to bolster the victim's credibility." Id.

Because we discern no basis for the admission of the victim's video-recorded interview with the detective under either prong of OCGA § 24-6-613 (c), the trial court abused its discretion in admitting the lengthy interview, which did not qualify as a prior consistent statement, but was, instead, pure hearsay improperly used to bolster the victim's credibility. See *Cowart*, 294 Ga. at 341 (4) (a). This conclusion, however, does not end our inquiry.

19

(c) *Impact of evidence*. "The improper admission of bolstering evidence is a non-constitutional, evidentiary error[.]" *Cowart*, 294 Ga. at 341 (4) (b). Accordingly, "to determine whether such error requires reversal, we must determine whether it is highly probable that the error did not contribute to the jury's guilty verdicts." *McGarity*, __ Ga. at __ (3).

> Where improper bolstering has occurred, this determination must be made without reliance on the testimony that was improperly bolstered, as the very nature of the error is that it is repetitive of that to which the witness has already testified. Instead, we must consider factors such as whether the State's case was based primarily on the bolstered testimony, and whether the improper bolstering added critical weight to that testimony.

Id. at __ (3) (citations and punctuation omitted).

Here, there was no physical evidence and the State's case was based for the most part on the adult victim's outcry, her trial testimony, and the hearsay statements recounted by other witnesses. As Castaneda points out, the victim's trial testimony consisted of a mere 28 pages, with far fewer dedicated to the alleged offenses charged in the indictment. Instead, the State used the victim's redacted 43 minute video-recorded interview with the detective to bolster the victim's testimony. This lengthy interview

20

was not merely cumulative of the victim's trial testimony. The victim provided much greater detail about the sexual abuse during the forensic interview than she did in her testimony at trial, and also provided time frames when various specific instances of abuse occurred, which she did not provide in her testimony.

*Sullins v. State*, 347 Ga. App. 628, 634 (1) (820 SE2d 468) (2018) (footnotes omitted) (molestation and sexual battery convictions reversed because trial court committed plain error in admitting victim's videotaped forensic interview and out-of-court statements concerning the abuse). In addition, the video-recorded interview included testimony about other acts not alleged in the indictment. "Thus, even though the victim's [brief] testimony standing alone may have been sufficient to convict [Castaneda], we cannot say that the victim's [lengthy video-recorded interview with the detective] did not likely affect the [jury's] verdict." Id.

> Inasmuch as there was no physical evidence to present to the jury, the jury was required to evaluate the credibility of the victim and [Castaneda] to determine if the crime [of aggravated child molestation] took place. We agree with [Castaneda] that the improper bolstering of the victim's credibility added critical weight to her testimony and did contribute to the verdict.

*Cash v. State*, 294 Ga. App. 741, 746 (669 SE2d 731) (2008). Accordingly, the trial court's admission of the victim's video-recorded interview with the detective was harmful and, under the circumstances of this case, the error must be remedied by

21

reversing Castaneda's convictions and affording him the opportunity for a new trial. See *McGarity*, __ Ga. at __ (3); accord *Cowart*, 294 Ga. at 342-343 (5).[4]

2. Castaneda argues in separate enumerations of error that the trial court committed plain error in admitting, in the absence of his objection, prior consistent statements the victim made to her counselor and the first responding officer. The State merely asserts that these claims fail for the same reasons as the claim regarding the admissibility of the victim's video-recorded interview with the detective. Castaneda further argues that he received ineffective assistance of trial counsel. Because Castaneda must be retried based on our conclusion in Division 1, it is unnecessary for us to consider his remaining enumerations of error.

*Judgment reversed. McFadden, C. J., concurs; and Rickman, P. J., concurs in judgment only.*

---

[4] We have circulated this decision among all nondisqualified judges of the Court to consider whether this case should be passed upon by all members of the Court. Fewer than the required number of judges, however, voted in favor of a hearing en banc on the question of overruling Division 3 in *Donaldson v. State*, 244 Ga. App. 89, 91 (3) (534 SE2d 839) (2000).